-------------------------------------------------------------------X

JANE REMLER,

Case No.: 1:21-cv-5176-ARR-LB

Plaintiff,

-against-

CONA ELDER LAW, PLLC
f/k/a GENSER, DUBOW, GENSER & CONA, LLP, and
150 RIVERSIDE OP. LLC d/b/a
THE RIVERSIDE PREMIER REHABILITATION
AND HEALING CENTER,

Defendants.

-------------------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

The Law Office of Ahmad Keshavarz
16 Court Street, 26th Floor,
Brooklyn, NY 11241-1026
(718) 522-7900
*Counsel for Plaintiff Jane Remler*

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ........................................................................... 1

II.   STANDARD OF REVIEW ................................................................................ 2

III.  SUMMARY OF RELEVANT FACTUAL ALLEGATIONS ............................ 3

IV.   MS. REMLER HAS ARTICLE III STANDING BASED ON HER CONCRETE AND PARTICULAR INJURY ..................................................................................... 12

V.    ARGUMENT AS TO FDCPA ......................................................................... 18

   A.   The Filing of the Collection Lawsuit and Opposition to Ms. Remler's MTD State Claims Under § 1692e. ............................................................................................... 18

      1.   Plaintiff's allegations that Defendants sued Ms. Remler on fraudulent conveyance she did not commit and that the they could never prove, and that the Defendants knew when they filed suit that they lacked proof of the fraudulent conveyance and never intended to verify the claim's validity, are distinguishable from *Lena* and *Eades*, as recognized by *Hackett* and several other cases. ....................................................................... 18

      2.   Defendants do not address Plaintiff's claims under § 1692e for the deceptive allegations under Family Court Act § 412 or misrepresenting a meaningful attorney review. ............... 26

   B.   The Filing of the Collection Lawsuit and the Opposition to Ms. Remler's MTD State Claims under § 1692f. ............................................................................................... 29

   C.   The Southern District of New York's Decision in *Franklin* Is Not Binding Authority and Was Decided Incorrectly. ........................................................................................ 32

VI.   ARGUMENT AS TO STATE LAW CLAIMS ............................................... 36

   A.   Plaintiff Has Stated a Claim against Cona Defendants for Violating Judiciary Law § 487. 36

      1.   Plaintiff's allegation that Cona Defendants acted with intent is supported by their pervasive engagement in the same conduct and their continued litigation of their baseless claims. .......................................................................................................................... 36

      2.   Cona Defendants filing at least 110 complaints alleging fraudulent conveyance without providing a factual basis is a chronic and extreme pattern of legal delinquency. ................. 37

   B.   Plaintiff Has Stated a Claim against Defendants for Violating GBL § 349. .................... 39

      1.   Defendants' conduct was consumer-oriented. ........................................................... 39

      2.   Defendants' conduct was materially deceptive. ....................................................... 42

   C.   Plaintiff Has Stated a Claim against Defendants for their Gross Negligence ................... 42

VII.  CONCLUSION ............................................................................................... 43

# <u>TABLE OF AUTHORITIES</u>

*Cases*

*Amalfitano v. Rosenberg*, 12 N.Y.3d 8, 903 N.E.2d 265, 269 (2009) ............................ 14, 17, 36

*Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 135-136 (2d Cir. 2017) . 30-31, 34-36 ...............................................................................................................................

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ....................................................................... 3

*Baltazar v. Houslanger & Assocs., PLLC*, No. 16-4982 (JMA) (AKT), 2018 WL 3941943, at *3 (E.D.N.Y. Aug. 16, 2018), *report and recommendation adopted*, No. 16CV04982JMAAKT, 2018 WL 4781143 (E.D.N.Y. Sept. 30, 2018) ...................................................... 27, 31

*Beattie v. D.M. Collections, Inc.*, 754 F.Supp. 383, 393 (D.Del. 1991) ...................................... 23

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 573 (2007) ......................................................... 19

*Bella v. Bureaus Inv. Grp. Portfolio No. 15 LLC*, No. 17CV6115ENVVMS, 2019 WL 2295840, at *2 (E.D.N.Y. May 30, 2019) ................................................................................................... 24

*Benjamin v. Rosenberg & Associates, LLC,* No. 19-3012 (RDM), 2021 WL 378430, at *6 (D.D.C. Aug. 26, 2021) .................................................................................................................. 16

*Berman v. Silver, Forrester & Schisano*, 156 A.D.2d 624, 625, 549 N.Y.S.2d 125, 126 (1989) 15

*Besson v. Southard,* 10 N.Y. 236 (1851) .................................................................................. 15

*Cameron v. LR Credit 22*, LLC, 998 F. Supp. 2d 293, 300 (S.D.N.Y. 2014) .................................

*Campbell v. MBI Assocs., Inc.,* 98 F. Supp. 3d 568, 588 (E.D.N.Y. 2015) .................................. 40

*Campion Funeral Home v. State of New York*, 166 A.D.2d 32, 36, 569 N.Y.S.2d 518 (1991), *lv. denied* 78 N.Y.2d 859, 575 N.Y.S.2d 455, 580 N.E.2d 1058 (1991) ........................................... 16

*Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir.1993) ............................................................ 23

*Demarais v. Gurstel Chago, PA,* 869 F.3d 685, 692 (8th Cir. 2017) ........................................... 16

*Diaz v. Portfolio Recovery Assocs., LLC*, No. 10 CV 3920 MKB CLP, 2012 WL 1882976, at *5 (E.D.N.Y. May 24, 2012) ..................................................................................... 27, 31, 37, 42

*Eades v. Kennedy, P.C. Law Offices,* 799 F.3d 161, 172 (2d Cir. 2015).............. 18, 20, 32, 34-35

*Easterling v. Collecto, Inc.*, 692 F.3d 229, 233 (2d Cir. 2012) .................................................... 23

*Elacqua v. Physicians' Reciprocal Insurers*, 52 A.D.3d 886, 888 (3rd Dept. 2008) ............. 40-41

*Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1517 (9th Cir.1994) ...................................... 30

*Franklin v. Cona Elder Law, PLLC,* 2022 WL 268628 (S.D.N.Y. Jan. 28, 2022)................. 32-35

*Genesco Entertainment, a Division of Lymutt Industries, Inc. v. Koch*, 593 F. Supp. 743, 747 (S.D.N.Y. 1984) ...................................................................................................................... 39

*Hackett v. Midland Funding LLC*, Case No. 18-cv-64621-FPG, 2019 WL 1902750 at *5 (W.D.N.Y. April 29, 2019) ......................................................................................................... 20

*Hinten v. Midland Funding, L.L.C.,* 2013 WL 5739035 (E.D. Mo. Oct. 22, 2013) ...................... 21

*Hunter v. Palisades Acquisition XVI, LLC*, No. 16 CIV. 8779 (ER), 2017 WL 5513636, at *9 (S.D.N.Y. Nov. 16, 2017) ..................................................................................................... 41-42

*Izko Sportswear Co., v. Flaum,* 809 N.Y.S.2d 119, 122, 25 A.D.3d 534, 537 (2d Dep't 2006) (misrepresentation of conflict) .......................................................................... 38

*Jackson v. POM Recoveries, Inc.*, No. 17CV6118AMDAKT, 2020 WL 4926259, at *5 (E.D.N.Y. Aug. 21, 2020) .......................................................................... 24

*Johnson v. Rowley,* 569 F.3d 40, 43-44 (2d Cir. 2009) .......................................... 3

*Kuria v. Palisades Acquisition XVI, LLC,* 752 F. Supp. 2d 1293 (N.D. Ga. 2010) ............ 20-21

*Lena v. CACH, LLC,* No. 13 C 01805, 2015 WL 4692443, at *2 (N.D. Ill. Aug. 6, 2015) ... 18-20, 32

*Magruder v. Capital One, National Association,* 2021 WL 1999544, at *8 (D.D.C. May 19, 2021) .......................................................................... 16

*Makhnevich v. MTGLQ Invs., L.P.*, No. 19 CIV. 72 (AT) (SN), 2021 WL 3406484, at *10 (S.D.N.Y. Aug. 4, 2021) .......................................................................... 14

*Mason v. Midland Funding L.L.C.,* 2017 WL 6994577 (N.D. Ga. July 27, 2017), *adopted,* 2017 WL 8186866 (N.D. Ga. Sept. 29, 2017) .......................................................................... 21

*McCrobie v. Palisades Acquisition XVI, LLC,* 359 F. Supp. 3d 239, 255 (W.D.N.Y. 2019) . 40, 42

*Mello v. Great Seneca Fin. Corp.,* 526 F. Supp. 2d 1020 (C.D. Cal. 2007) ........................ 21

*Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 301 (2d Cir.2003) ........................... 27

*Mora v. LVNV Funding LLC,* 408 F.Supp.3d 297, 301 (N.D.N.Y. 2019) ............................ 20-21

*Musah v. Houslanger & Assocs., PLLC,* 962 F.Supp.2d 636, 641 (S.D.N.Y. 2013) .................. 27

*New York University v. Continental Insurance Company*, 87 N.Y.2d 308 (1995) ..................... 40

*NYAT. Operating Corp. v. Jackson, Lewis, Schnitzler & Krupman,* 741 N.Y.S.2d 385, 386, 191 Misc.2d 80, 82 (N.Y.Sup.Ct.2002) .......................................................................... 38

*Okyere v. Palisades Collection, LLC* (*Okyere I*), 961 F. Supp. 2d 508, 517 (S.D.N.Y. 2013) .... 30

*Okyere v. Palisades Collection, LLC (Okyere II)*, 961 F. Supp. 2d 522, 534 (S.D.N.Y. 2013) ... 30

*Oliver v. U.S. Bancom*, No. 14 CV 8948, 2015 WL 4111908, at *2 (S.D.N.Y. July 8, 2015) ......... 20

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741,745 (N.Y. 1995) .......................................................................... 39-42

*Panebianco v. Selip & Stylianou, LLP,* No. 21-CV-5466(DRH), 2022 WL 392229, at *1 (E.D.N.Y. Feb. 9, 2022) .......................................................................... 15

*Perryman v. Vill. of Saranac Lake*, 41 A.D.3d 1080, 1081, 839 N.Y.S.2d 290, 292 (2007) ....... 16

*Rozier v. Fin. Recovery Sys., Inc.*, No. 10-CV-3273 DLI JO, 2011 WL 2295116, at *5 (E.D.N.Y. June 7, 2011) .......................................................................... 40

*Rumfelt v. Midlanding Funding LLC,* No. 18-CV-6420-FPG, 2019 WL 1902784, at *5 (W.D.N.Y. Apr. 29, 2019) .......................................................................... 21

*Russell v. Equifax A.R.S.,* 74 F.3d 30, 34 (2d Cir. 1996) .......................................... 23

*Samms v. Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP*, 163 F. Supp. 3d 109, 116 (S.D.N.Y. 2016) .......................................................................... 24, 25, 40

*Samuels v. Midland Funding, LLC,* 921 F. Supp. 2d 1321 (S.D. Ala. 2013) .......................... 20-21

*Somerset v. Stephen Einstein & Assocs., P.C.,* 351 F. Supp. 3d 201, 207-08 (E.D.N.Y. 2019)... 31

*Spira v. Ashwood Fin., Inc.*, 358 F. Supp. 2d 150, 157, fn. 5 (E.D.N.Y. 2005) .......................... 24

*Sykes v. Mel Harris & Associates, LLC,* 757 F.Supp.2d 413, 428 (S.D.N.Y. 2010).................... 37

*Sykes v. Mel S. Harris & Assocs. LLC,* 780 F.3d 70 (2d Cir. 2015)............................................ 30

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002)......................................................... 3

*Teitelbaum v. I.C. Sys., Inc.*, No. 20CV3272PKCLB, 2021 WL 2206740, at *3 (E.D.N.Y. June 1, 2021) ........................................................................................................................................... 24

*Tinsley v. Fairway Collections LLC,* Case No. C21-0260-JCC, 2021 WL 1691255, at *2 (W.D. Wash. April 29, 2021)................................................................................................................... 20

*Transunion LLC v. Ramirez,* 141 S.Ct. 2190 (2021) .................................................................. 13

*Viernes v. DNF Assocs., LLC*, No. CV 19-00316 JMS-KJM, 2022 WL 252467 (D. Haw. Jan. 27, 2022) ....................................................................................................................................... 16-17

*Villalba v. Houslanger & Assocs., PLLC*, No. 19CV4270PKCRLM, 2022 WL 900538 (E.D.N.Y. Mar. 28, 2022)....................................................................................................................... 23, 35-36

*Woychesin v. Midland Funding, L.L.C.,* 2020 WL 5893815 (N.D. Ala. Oct. 5, 2020) ............... 21

### *Statutes*

Fed. R. Civ. P. 12(b)(6)................................................................................................................... 3

15 U.S.C. § 1692, *et. seq.*........................................................................................................... 18-36

42 U.S.C. § 1396r et seq. ...................................................................................................... 1, 6, 9, 38

NY Debtor & Creditor Law § 276-a ..................................................................................... *passim*

NY Family Court Act § 412 ................................................................................................... *passim*

N.Y. Gen. Bus. Law § 349............................................................................................................. 39-42

N.Y. Jud. Law § 487................................................................................................................... 36-39

# I. PRELIMINARY STATEMENT

Contrary to the arguments of Defendants' Motion to Dismiss, Plaintiff has stated claims against Cona Defendants for violations of the FDCPA and Judiciary Law § 487, and against all Defendants for violations of GBL § 349 and committing gross negligence. Defendants' Motion to Dismiss [DE 18] ("MTD"). This case is about a deceptive scheme perpetuated by Defendants, against Plaintiff and many other consumers, to go after innocent family members and other third parties for debts they do not owe and to illicitly demand attorney's fees not available by law.

More than thirty years ago, Congress passed the Nursing Home Reform Act (42 U.S.C. § 1396r et seq.) which established a prohibition on nursing homes requiring financial guarantees of third-parties as a condition of admission. But Defendants in this action, a nursing home named 150 Riverside Op. LLC ("Riverside") and its debt collection attorneys Cona Elder Law, PLLC and Ken Kern (collectively "Cona Defendants"), have found a new way to evade this public policy that protects the elderly and their families. Unable to hold third parties, usually family members, liable for nursing home debts via admission agreements because of the federal law, Defendants fabricate claims of fraudulent conveyance, which allows them to bring third parties into their debt collection lawsuits and to demand attorney's fees from them on top of the nursing home debt. And in the cases where Defendants are targeting the spouse of the Resident, they also bring claims under New York Family Court Act § 412 under the sole premise of the marriage and without even alleging the other elements necessary to bring such a claim successfully. Plaintiff Jane Remler, whose husband Norman Blank was a resident at Riverside, was one of the innocents ensnared in this predatory debt collection.

On June 18, 2020, Riverside, through Cona Defendants, filed a Complaint against Plaintiff Jane Remler and her husband making baseless claims of fraudulent conveyance and

under the NY Family Court Act § 412 against them. All the fraudulent conveyance allegations, unlike the allegations for breach of implied contract and unjust enrichment, were made upon information and belief. The only allegations against Plaintiff were these baseless fraudulent conveyance allegations and the unsubstantiated Family Court Act § 412 claim – without them, Defendants would not have been able to name her as a party. The baseless fraudulent conveyance allegations also allowed Defendants to make a claim against Ms. Remler and her husband for attorney's fees under NY Debtor & Creditor Law § 276-a. Ms. Remler filed a Motion to Dismiss and, prior to it being ruled on, Defendants discontinued their lawsuit because Riverside apparently received renumeration from Mr. Blank's insurance.

Claims of fraudulent conveyance were made in more than 85% of the nursing home collection complaints filed by Cona Defendants since 2017, and every single one of these allegations was made without factual basis. Cona Defendants tacitly admits in these complaints that the fraudulent conveyance allegations do not have a factual basis as they are always alleged "upon information and belief," whereas the claims against the residents of the nursing homes for breach of contract and unjust enrichment are made without disclaimer or hedging.

Rather than following the law and obtaining compensation from legitimate sources, Defendants have immiserated family members of nursing home residents like Plaintiff Jane Remler, who was plunged into this baseless litigation against her when Defendants clearly could have, and ultimately did, received renumeration legitimately from insurance. To go after a family member for a debt she does not owe, to sully her name and reputation with false accusations of fraud, is unconscionable, and Defendants must be held accountable for this business model of illicit disenfranchisement of some of New York's most vulnerable residents.

## II.     STANDARD OF REVIEW

2

To survive a motion to dismiss for failure to state a claim, the plaintiff must plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Johnson v. Rowley*, 569 F.3d 40, 43-44 (2d Cir. 2009) (internal citation and quotation marks omitted). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion, the Court must accept as true all factual allegations set forth in the complaint and draw all reasonable inferences in favor of the plaintiff. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002).

### III.    SUMMARY OF RELEVANT FACTUAL ALLEGATIONS

Jane Remler, a woman living in Queens, NY, has a husband who received nursing care at Defendant Riverside. *See* **Exhibit 1 to Keshavarz Declaration** (Complaint) at ¶ 10 (hence "Exhibit"). Mr. Blank's stay at Riverside was lacking in actual nursing care, and he developed bedsores and was treated rudely while at Riverside. *Id.* ¶¶ 11-12. On February 18, 2020, Mr. Blank's insurance company determined, against the request of his physician, that he no longer needed skilled nursing care and should be transferred home. *Id.* ¶ 13 *citing* **Exhibit A** (Insurance Letter Denying Further Coverage). Crucially however the letter noted that "Additional days are approved for arranging needed equipment and planning safe transition"; the insurance would cover the transitional period. **Exhibit 1** ¶¶ 14-15. Mr. Blank was at Riverside from February 21 through March 10, 2020, a total of 18 days, after his care had no longer been deemed medically necessary. *Id.* ¶ 18.  Mr. Blank received two Explanation of Benefits Statements in May stating that he owed $0 to Riverside; conversely, his insurance wrote a letter to Riverside informing it that it was overbilling Mr. Blank. *Id.* ¶¶ 19-21 *citing* **Exhibits C** (May 6, 2020 Statement)**, D**

(May 15, 2020 Statement)**,** and **E** (Overbilling Letter).

Despite this notice of overbilling, Riverside assigned the debt to Cona Defendants for collections. **Exhibit 1 ¶** 22. Cona mailed Ms. Remler a letter dated September 18, 2020, alleging that $9,784.98 was owed to Riverside. *Id.* ¶ 23 *citing* **Exhibit F** (Collection Letter). The Collection Letter deceptively alleged that Ms. Remler "had access to and/or received Norman Blank's assets and/or income, which should have been remitted to The Riverside for the skilled residential nursing services provided to him," and made that defamatory statement "on information and belief." **Exhibit 1 ¶** 25. The defamatory letter was seen by, *inter alia,* Mr. Blank.

On October 19, 2020, Riverside, by and through the Cona Defendants, filed against Norman Blank and Jane Remler a single page Summons with Notice ("Summons"). *Id.* ¶ 26 *citing* **Exhibit G** (Summons with Notice). The entirety of the substantive claims in the document was: "Statement of the nature and substance of Plaintiff's cause of action: Breach of Implied Contract, Unjust Enrichment and Breach of Family Court Act § 412. The relief sought is $9,748.98 with interest from March 1, 2020." *Id.* The Summons, signed by Defendant Ken Kern, did not state which claim was brought against which defendant much less provide a factual basis for any claim. **Exhibit 1 ¶** 27. On or about November 3, 2020, the Summons with Notice was served on Ms. Remler and Mr. Blank by posting it on the apartment door. *Id.* ¶ 56. This published to anyone in the apartment building who might walk past their door the false allegation that Ms. Remler owed a debt of $9,748.98 plus interest. *Id.*

On January 18, 2021, Riverside, through its attorneys the Cona Defendants, filed a Verified Complaint and served it on Ms. Remler. *Id.* ¶ 32 *citing* **Exhibit M** (Verified Complaint). The Verified Complaint was signed and filed by Cona attorney Brian J. Haran, who

also executed the Attorney's Verification to the Complaint stating in pertinent part "I have read the annexed COMPLAINT, know the contents thereof, and the same are true to my knowledge, except those matters therein which are stated to be alleged on information and belief, and as to those matters I believe them to be true based upon my own investigation and knowledge, as well as conversations with my client and review of documents provided to me in connection herewith." **Exhibit 1** ¶ 33 *quoting* **Exhibit M,** p. 10. The causes of action in the Verified Complaint for Breach of Implied Contract and Unjust Enrichment were brought only against Norman Blank, not against Jane Remler. **Exhibit 1** ¶ 34. For the first time in the collection lawsuit, Defendants alleged in the Verified Complaint that both Norman Blank and Jane Remler had committed fraudulent conveyance, specifically that Mr. Blank "wrongfully conveyed her assets and income to the Defendant, JANE REMLER-BLANK[1], without fair consideration, in order to prevent Plaintiff from recovering monies due it for services provided to the Resident-Defendant and said conveyances were accepted by the Defendant." **Exhibit 1** ¶ 35 *quoting* **Exhibit M,** ¶ 17. This allegation was made "Upon information and belief"; in fact, all pertinent allegations of fraudulent conveyance against Mr. Blank and Ms. Remler were made "Upon information and belief." **Exhibit 1** ¶ 36 *quoting* **Exhibit M,** ¶¶ 17-18, 21-22, 30-31, 34-35**.** Cona made the allegations regarding fraudulent conveyance "Upon information and belief" because neither it nor the other Defendants had any factual basis for believing that either Mr. Blank or Ms. Remler had committed fraudulent conveyance against them. **Exhibit 1** ¶ 37 *citing* **Exhibit M**.

---

[1] Ms. Remler sometimes refers to herself as "Jane Remler-Blank" to make clear that her and her husband Norman Blank are married despite their different surnames – upon information and belief, this is why she is referred to as "Jane Remler-Blank" in the Verified Complaint.

Making the allegations "Upon information and belief" was not some quirk of drafting or reasonable precaution by Defendants – it was Defendants tacitly admitting that their fraudulent conveyance allegations lacked a factual basis. **Exhibit 1** ¶ 38. This is clear from a comparison of the fraudulent conveyance allegations, made "Upon information and belief," versus the allegations of breach of implied contract and unjust enrichment, which were alleged without disclaimer and were made with a factual basis. *Id.* ¶ 39. The baseless allegations of fraudulent conveyance were a cynical litigation tactic to bring Plaintiff into the collections lawsuit without running afoul of the prohibition under the Nursing Home Reform Act, 42 U.S.C. §§ 1396r *et seq.*, against making third parties financially liable for residents. *Id.* ¶ 41. Defendants filed suit for fraudulent conveyance that they knew they had no evidence of, would not be able to prove on the merits, and had no intention of proving on the merits. *Id.* ¶ 43. Consequently, Defendants knew they had no basis to make a demand for attorney's fees, which was based solely on the claim of fraudulent conveyance. *Id.* The defamatory allegation that Ms. Remler committed fraudulent conveyance was seen by her husband, Mr. Blank. *Id.* ¶ 59.

Defendants falsely represented to Ms. Remler that Cona had meaningfully reviewed the facts and circumstances of this case against Ms. Remler and her husband, and made an independent legal determination that they committed fraudulent conveyance and were liable for attorney's fees. *Id.* ¶¶ 60-61. The express citation of DCL § 276-a in the Verified Complaint evinces that either Cona failed to perform a meaningful attorney review of the factual basis to determine whether there was fraudulent conveyance with actual intent or Cona did perform a meaningful attorney review, found no factual basis, and misrepresented entitlement to attorney's fees under DCL § 276-a despite finding no factual basis. *Id.* ¶ 69. Attorney's fees under DCL § 276-a are only available "where such conveyance is found to have been made by the debtor and

received by the transferee with actual intent, as distinguished from intent presumed in law." *Id.* ¶ 63. Ms. Remler did not commit fraudulent conveyance and Defendants had no evidence that she did, and their claim for fraudulent conveyance was the only legal basis stated for seeking attorney's fees against Ms. Remler. *Id.* ¶ 65.

Other than fraudulent conveyance, Defendants also alleged that Ms. Remler was liable for support of her spouse under the Family Court Act § 412 and the Doctrine of Necessaries. *Id.* ¶ 47. But even these claims were threadbare and failed to allege a *prima facie* cause of action, missing the essential elements for either claim. *Id.* The Family Court Act § 412 claim was facially frivolous, solely asserting that Ms. Remler and Mr. Blank were married and nothing else; while Ms. Remler is indeed married to Mr. Blank, simply alleging that Defendants are married is insufficient to state a cause of action for Family Court Act § 412. *Id.* ¶¶ 48-49. Defendants did not allege that Mr. Blank was unable to satisfy the debt out of his own resources, did not allege that the necessaries were furnished on Ms. Remler's credit, and did not allege that Ms. Remler had the ability to satisfy the debt. *Id.* ¶ 50. Because nursing homes know they are precluded by federal law from requiring a third party guarantee of payment by law, Defendants could not have even made a good faith facial claim that the nursing home relied "on the credit" of Ms. Remler. *Id.* ¶ 51. Defendants also could not allege in good faith that Riverside relied on the spouse's credit since it was clear that the anticipated payor was the Resident's insurance, which ultimately did pay 11 months after Defendants sued Ms. Remler. *Id. citing* **Exhibits A, E, R, S, T,** and **U.** Defendants did not allege any of the elements of § 412 because they had no facts to substantiate them, they knew when they filed suit that they did not have and would not be able to obtain proof, and they had no intention of doing so. **Exhibit 1** ¶ 52.

Plaintiff and Mr. Blank retained The Law Office of Ahmad Keshavarz to represent them

in the collection lawsuit, becoming contractually liable to pay attorney's fees and costs. *Id.* ¶ 71. The Cona demand for attorney's fees was a factor is Ms. Remler retaining an attorney, since she understood the amount of fees she could be liable for could be substantial. *Id.* On February 5, 2021, Plaintiff, through her newly hired attorneys, filed a Motion to Dismiss. *Id.* ¶ 72 *citing* **Exhibit N** (Motion to Dismiss). Defendants doubled down on their misrepresentations in their Opposition to the Motion on February 18, 2021. **Exhibit 1** ¶ 73 *citing* **Exhibit O** (Opposition to MTD). For 7 more months, Cona maintained its Opposition to the MTD. **Exhibit 1** ¶ 74.

Meanwhile, Mr. Blank's insurance wrote to Riverside multiple times soliciting additional information, and Riverside's failure to promptly provide that information delayed determinations of coverage of the very same debt that Defendants sought to collect in the collection lawsuit. *Id.* ¶¶ 75-78 *citing* **Exhibit Q** (March 2, 2021 Statement), **R** (April 29 Insurance Letter Requesting Additional Information), and **S** (May 24 Insurance Letter Requesting Additional Information). Riverside's reckless disregard prevented coverage for more than a year, well after Riverside, by and through Cona, had filed the collection lawsuit on the alleged debt. *Id.* ¶¶ 79-82 *citing* **Exhibit E, T** (July 15, 2021 Statement), and **U** (August 13, 2021 Statement). Riverside, having its debt satisfied by the insurance company around July 2021, agreed in August 2021 to the filing of a Stipulation of Discontinuance, for which Ms. Remler incurred a $35 filing fee. **Exhibit 1** ¶¶ 83-85 *citing* **Exhibit V**.

Defendants unlawfully increase their revenue by creating illicit schemes to increase collection of nursing home debts, with the added benefit of the debt collector seeking its attorney's fees from the putative debtors rather than the nursing home. **Exhibit 1** ¶ 90. Defendants are not the first in the nursing home industry to realize the advantage that could be obtained by making baseless allegations of attorney's fee to discourage consumers from fighting

what could be baseless lawsuits. *Id.* ¶ 91. Defendants here have gone a step further by not only seeking attorney's fees with no factual basis but also bringing in innocent third parties with no factual basis. *Id.* ¶ 92. And Defendants' twisted "innovation" to go after innocent family members and other third parties for nursing debts is exactly why Congress passed the Nursing Home Reform Act, 42 U.S.C. §§ 1396r et seq. *Id.* ¶ 94. As federal regulators took increased action to ensure the purpose of the third party guarantee prohibition is enforced, Defendants discovered they could illicitly obtain third party liability, not through admission agreements, but instead through baseless claims of fraudulent conveyance. *Id.* ¶¶ 95-97.

The Cona complaints in this illicit scheme are inherently suspect because of the identical boilerplate and conclusory allegations made in them. *Id.* ¶ 99. At minimum, these fraudulent conveyance claims demonstrate a lack of meaningful attorney review, with Cona failing to investigate the facts at issue, and in the case of Ms. Remler and others, the fraudulent conveyance claims are purely fabrications. *Id.* ¶ 100. During the period of January 1, 2017 to December 31, 2020, Cona routinely filed collections lawsuits against family and friends of nursing home residents not otherwise liable for the debts, such as Ms. Remler, alleging fraudulent conveyance without any factual basis for the claim and, upon the basis of those fraudulent conveyance allegations, demanding judgment for attorney's fees. *Id.* ¶ 101. Nearly all of these lawsuits were initiated, like the lawsuit against Ms. Remler, with a summons with notice and without a complaint, masking the demand for attorney's fees and the lack of factual allegations until the defendant demanded a complaint. *Id.* ¶ 102. A review of publicly filed collections lawsuits by Cona on behalf of nursing homes from January 1, 2017 through December 31, 2020 in New York State Supreme Courts produced a list of approximately 490 lawsuits. *Id.* ¶ 103. Despite the COVID-19 pandemic and associated shutdowns, Cona still filed

more collections lawsuits for nursing homes in 2020 than in 2019. *Id.* Of the 490 lawsuits, only 128 have a complaint, and of those complaints, 110 sought attorney's fees in the prayer on the basis of fraudulent conveyance claims. *Id.* ¶ 104. These claims for fraudulent conveyance allege, without facts, transfers by the resident to a third party, usually a family member, with the intent to defraud the nursing home at issue. *Id.* All the 110 complaints alleging fraudulent conveyance made those allegations about fraudulent conveyance "upon information and belief" like the Complaint against Ms. Remler. *Id.* ¶ 105, **Exhibit M**.

Of the 490 lawsuits, 66 brought claims under Family Court Act § 412. **Exhibit 1** ¶ 113. 28 of these 66 lawsuits had complaints, and every single one of those complaints had the same threadbare single allegation upon information and belief that was made against Ms. Remler: "Upon information and belief, at all times hereinafter mentioned, the Resident-Defendant and the Defendant are husband and wife." *Id.* ¶ 114. In the lawsuit against Ms. Remler and in all of the 28 complaints where Family Court Act § 412 claims are made, there are no allegations that the necessaries were furnished on the credit of the third party spouse. *Id.* ¶ 122. Defendants' scheme is lucrative – out of the 490 collection lawsuits, Defendants obtained 123 default judgments. **Exhibit 1** ¶ 108.

From 2017-2020, all of Cona's allegations of fraudulent conveyance on behalf of nursing homes had the same or similar deficiencies. **Exhibit 1** ¶ 109. Alleging fraudulent conveyance without any facts, as evinced by the standard use of making those fraudulent conveyance allegations "upon information and belief," evinces that lack of meaningful attorney review of these complaints by Cona is consumer-oriented, particularly as frequently juxtaposed to allegations for breach of contract or unjust enrichment made against Residents in many of the same complaints without any such disclaimer like "upon information and belief." *Id.* ¶ 110.

In addition, by demanding judgment for attorney's fees when none are allowed, Defendants deceive consumers into believing that they may incur additional amounts for Cona's attorney's fees if they challenge the complaint than if they do not. *Id.* ¶ 124. Therefore, this misrepresentation may make consumers less likely to challenge the allegations of the complaint, and more likely to default or to pay the debt. *Id.* This is especially true because the complaints seek to collect putative nursing home debts. *Id.* ¶ 125. The cost to the consumer of the same exact service would vary dramatically based upon whether there is exclusion in coverage, whether the deductible has been reached, whether the provider properly and timely submitted the claim to the insurance carrier, or for a host of other reasons, most unknown to the consumer. *Id.* This is especially true in the present case where Plaintiff received 15 Explanation of Benefits Statements between March 5, 2020 and August 13, 2021, and was told in separate and conflicting communications that Riverside was overbilling, that no claim was submitted to insurance at all, and that Riverside failed to provide necessary information. *Id.* ¶ 126 *citing* **Exhibits C, D, E, F, H, J, K, L, Q, R, S, T,** and **U.** Therefore, even more so than consumers sued for other types of debts, consumers sued by Defendants for nursing home debts would have little way of knowing if the amount claimed due in the complaint was even remotely accurate. *Id.* ¶ 128. What consumers would see is a large amount of money sought by the Defendants; the typical annual cost of nursing home care in 2016 was $82,000, so even a fraction of that cost is far more money than most people have on hand or in savings. *Id.* ¶ 129. As such, Cona's demand for attorney's fees using unsubstantiated allegations of fraudulent conveyance is particularly pernicious as consumers with the least knowledge of the accuracy of the debt are the most discouraged from challenging the accuracy of the debt, again because those consumers would be afraid that the challenge would increase the attorney's fees to be awarded in judgment for Cona.

*Id.* ¶ 130.

Defendants' deceptive scheme added insult to injury after Riverside's improper care of Mr. Blank, putting additional stress on Ms. Remler as she had to begin to take care of her husband at home. *Id.* ¶¶ 150-154. Ms. Remler found the Summons with Notice on the floor in front of their door – since she lives in a large building with 10 floors, it is likely that someone in the building had seen it. *Id.* ¶ 155. And when Ms. Remler finally received the Verified Complaint, she was sickened and outraged. *Id.* ¶ 157. She had to stop reading it because it was so distressing. *Id.* ¶ 158. Ms. Remler did not commit fraud and resent being accused of it in such a completely baseless way – it was an insult to her reputation and an assault on her emotional wellbeing. *Id.* ¶¶ 159-160. She was also outraged that they were demanding attorney's fees – she felt that the lawsuit was unfair and that she was being bullied. *Id.* ¶¶ 161-162. Every time she thinks about the lawsuit she can feel her blood pressure going up, and she cannot help but think of it every time she sees the file or gets a phone call about it. *Id.* ¶ 163. It makes her even angrier because of how Riverside had advertised itself to her as a premiere rehab facility for Mr. Blank to recover in. *Id.* ¶ 164. Ms. Remler had no idea how she was going to handle the lawsuit when she was already so busy taking care of Mr. Blank and having a full time job. *Id.* ¶ 165. The stress of the lawsuit, on top of the stress of the COVID-19 pandemic and having to take care of her husband, has caused her loss of sleep and overeating. *Id.* ¶¶ 166-171. Around 3 nights every week she had problems sleeping due to her stress, any night where she thinks about this and it makes her angry. *Id*. ¶ 166. She has continued to have problems sleeping from the stress throughout 2021. *Id*.

## IV. MS. REMLER HAS ARTICLE III STANDING BASED ON HER CONCRETE AND PARTICULAR INJURY

The Motion did not raise Article III standing and the recent interpretation of it by the Supreme Court in *Transunion LLC v. Ramirez,* 141 S.Ct. 2190 (2021). However, all Article III courts, including this Court, have discretion to raise standing issues *sua sponte*, so Plaintiff will address them briefly here. In short, *Ramirez* does not alter whether Plaintiff here has suffered a concrete injury for Article III standing, and since Plaintiff has suffered several such injuries, Plaintiff has standing to bring all her claims against both sets of Defendants.

The issue in *Ramirez* is conveniently and concisely summarized in the first paragraph of Justice Brett Kavanaugh's decision:

> "To have Article III standing to sue in federal court, plaintiffs must demonstrate, among other things, that they suffered a concrete harm. No concrete harm, no standing. Central to assessing concreteness is whether the asserted harm has a "close relationship" to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms including (as relevant here) reputational harm." *Id.* at 2200.

The holdings in *Ramirez* as to concreteness can be summarized as follows: for intangible harms, there must be "a close historical or common-law analogue for their asserted injury." *Id.* at 2204. In *Ramirez,* the "analogue" was defamation, and the Court held that those class members who had their credit reports published to third parties had established concrete injury (hence "the published class") and those class members who did not have their credit reports published to third parties had failed to establish concrete injury ("the unpublished class"). *Id.* at 2208-2211. For the published class, the Court noted that the misleading information being technically true was not material because the publication of misleading information was sufficiently analogous to common-law defamation's publication of false information. *Id.* at 2209 ("we do not require an exact duplicate [of the common-law analogue]"). However, the Court more strictly enforced the publication element of common-law defamation, and thus held the unpublished class lacked

standing, because "publication is generally presumed **to cause** a harm." *Id.* at 2211 [emphasis added]. While the exact requirements of the "common-law analogue" for intangible injury are not completely clear, the Supreme Court has clarified that the analogue need not meet all the elements but must meet any element necessary to the cause of the alleged injury.

*Ramirez* does not change even the analysis of why Plaintiff has suffered a concrete injury because Defendants' violations of the FDCPA, GBL § 349, and Judiciary Law § 487 caused an economic harm to Plaintiff. Ms. Remler became contractually liable for attorney's fees and expenses for defending against the baseless lawsuit, including the filing fees for her Motion to Dismiss the collection lawsuit and for the Stipulation of Discontinuance. *Ramirez* dealt with the concreteness of intangible harms, and Ms. Remler's economic injury renders analysis of her intangible harms unnecessary. *See e.g. Makhnevich v. MTGLQ Invs., L.P.*, No. 19 CIV. 72 (AT) (SN), 2021 WL 3406484, at *10 (S.D.N.Y. Aug. 4, 2021) (finding costs in litigating collection lawsuit stated an injury for Judiciary Law § 487 claim) *citing Amalfitano v. Rosenberg,* 12 N.Y.3d 8, 903 N.E.2d 265, 269 (2009).

However, even if Plaintiff had not incurred any economic harm, Plaintiff's intangible injuries are sufficiently concrete to confer Article III standing under *Ramirez*. The injuries have three analogues to traditional actions in American courts: defamation, malicious civil prosecution, and N.Y. Judiciary Law § 487. The defamation analysis is straightforward given its application in *Ramirez*: Defendants' falsely accused Ms. Remler in the Summons of having reneged on an obligation of $9,784.98 to Riverside and published those false allegations to third parties, including but not limited to the process server, the court, Ms. Remler's neighbors in the 10 floor apartment where the Summons laid in plain sight on the floor in front of Ms. Remler's

apartment door, and to her co-defendant husband, Norman Blank. Moreover, the Verified Complaint with the express allegations of fraudulent conveyance served after Ms. Remler filed a notice of appearance was published to co-defendant Norman Blank, and the court clerk and court staff.

While a defamation claim may not ordinarily be viable in the context of litigation, the only question for standing is whether Plaintiff's claims are sufficiently similar to defamation; the false allegations by Defendants were made to third parties, they were not some "mere existence of inaccurate information in a database." *Ramirez*, 141 S. Ct. at 2209. Particularly for this case, the publication of defamatory allegations against Ms. Remler on visible papers in front of her apartment, open to the view of any passerby, stands in stark contrast with information being insulated in a credit bureau's database as in *Ramirez. See e.g. Panebianco v. Selip & Stylianou, LLP,* No. 21-CV-5466(DRH), 2022 WL 392229, at *1 (E.D.N.Y. Feb. 9, 2022). Likewise, the September 18, 2020 collection letter mailed to Ms. Remler and seen by her husband alleged falsely accused Ms. Remler of accessing and transferring income and assets of her husband that allegedly should have been remitted to Riverside. *Id.* ¶¶ 23-25.

Malicious civil prosecution requires "(1) the commencement of a judicial proceeding against the plaintiff, (2) at the insistence of the defendant, (3) without probable cause, (4) with malice, (5) which action was terminated in favor of the plaintiff, and (6) to the plaintiff's injury." *Berman v. Silver, Forrester & Schisano*, 156 A.D.2d 624, 625, 549 N.Y.S.2d 125, 126 (1989). It is a traditional common-law claim in American courts. *See e.g. Besson v. Southard,* 10 N.Y. 236 (1851). Applying *Ramirez,* the question is what element of malicious civil prosecution is the cause of injury and thus must also be present in Plaintiff's claims. "The gravamen of a civil

malicious prosecution cause of action is the wrongful initiation, procurement or continuation of a legal proceeding" *Perryman v. Vill. of Saranac Lake*, 41 A.D.3d 1080, 1081, 839 N.Y.S.2d 290, 292 (2007) *quoting Campion Funeral Home v. State of New York*, 166 A.D.2d 32, 36, 569 N.Y.S.2d 518 (1991), *lv. denied* 78 N.Y.2d 859, 575 N.Y.S.2d 455, 580 N.E.2d 1058 (1991). But-for the false allegations of fraudulent conveyance and unsubstantiated claim of Family Court Act § 412, there would not have been any claims against Ms. Remler, and thus it was that deception which caused "the wrongful initiation" of the collection lawsuit against her. Federal courts have found that similar FDCPA claims for collecting on an amount not available under law or contract was analogous to traditional malicious civil prosecution. *Demarais v. Gurstel Chago, PA,* 869 F.3d 685, 692 (8th Cir. 2017) ("The harm of being subjected to baseless legal claims, creating the risk of mental distress, provides the basis for both § 1692f(1) claims and the common-law unjustifiable-litigation torts"); *Magruder v. Capital One, National Association,* 2021 WL 1999544, at *8 (D.D.C. May 19, 2021) ("being subjected to attempts to collect debts not owed" "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts…common-law unjustifiable-litigation torts"); *Benjamin v. Rosenberg & Associates, LLC,* No. 19-3012 (RDM), 2021 WL 378430, at *6 (D.D.C. Aug. 26, 2021) (finding that where Defendant "misrepresent[ed] the legal status of the debt" and "attempted 'to collect amounts on the debt that were illegal or unreasonable,'" the harm was "closely related to one recognized at common-law (*i.e.,* wrongful-litigation torts)"). A federal court recently applied the *Ramirez* standing analysis to a FDCPA claim in *Viernes v. DNF Assocs., LLC*, No. CV 19-00316 JMS-KJM, 2022 WL 252467 (D. Haw. Jan. 27, 2022). The FDCPA claim essentially was that DNF filed collection lawsuits in Hawaii without being registered as a debt collector in Hawaii, which made the collection lawsuits deceptive

communications misrepresenting DNF's legal ability to collect debts in Hawaii. *Id.* at *1-2. The court in *Viernes* perceptively noted that it was not necessary to find every element of common law malicious prosecution to establish standing, but rather the question was whether "the harms associated with that tort bear a close relationship with the harm of being subjected to an unlawful lawsuit," and the court found that "subjecting someone to an unlawful lawsuit bears a strong resemblance to the core of the wrongful-civil-proceedings tort—suing someone without probable cause and for an improper purpose." *Id.* at *9.

Finally, N.Y. Judiciary Law § 487 is itself a traditional cause of action, and here Plaintiff's FDCPA and GBL § 349 claims are analogous to it for the Cona Defendants. The elements of Judiciary Law § 487 are (1) an attorney, (2) who commits "any deceit or collusion, or consents to any deceit or collusion," and (3) "with intent to deceive the court or any party."[2] N.Y. Judiciary Law § 487 is "the modern-day counterpart of a statute dating from the first decades after Magna Carta; its language virtually (and remarkably) unchanged from that of a law adopted by New York's Legislature two years before the United States Constitution was ratified." *Amalfitano,* 12 N.Y.3d at 14. Ms. Remler's claims against Cona Defendants under the FDCPA and GBL § 349 are the same factual allegations as her claims under Judiciary Law § 487: (1) Cona and Ken Kern (2) filing and litigation false allegations of fraudulent conveyance against Ms. Remler (3) with the intent to deceive the court into believing these allegations so as to make Ms. Remler liable for the underlying debt and attorney's fees.

Again, Ms. Remler suffered the concrete injury of economic harm in regard to all of her

---

[2] Judiciary Law § 487 is also available where an attorney "willfully receives any money or allowance for or on account of any money which he has not laid out, or becomes answerable for," but that is not applicable in this matter.

claims, but even if she had not, she suffered injuries analogous to three claims traditionally recognized by American courts. Thus under *Ramirez* Ms. Remler has Article III standing.

## V.    ARGUMENT AS TO FDCPA

### A.    The Filing of the Collection Lawsuit and Opposition to Ms. Remler's MTD State Claims Under § 1692e.

**1.    Plaintiff's allegations that Defendants sued Ms. Remler on fraudulent conveyance she did not commit and that the they could never prove, and that the Defendants knew when they filed suit that they lacked proof of the fraudulent conveyance and never intended to verify the claim's validity, are distinguishable from *Lena* and *Eades*, as recognized by *Hackett* and several other cases.**

Defendants argue that the Verified Complaint was not deceptive or misleading because it only "implied" that Ms. Remler committed fraudulent conveyance and "**If** the claim of fraudulent conveyance was successful, any improper transfer of funds from Mr. Blank to Plaintiff would have been set aside and Plaintiff could have been liable for the outstanding balance…[and] attorney's fees pursuant to §276-a." MTD, p. 7-8. In the world created by Defendants, lawsuit allegations are hypotheticals that can harmlessly be made regardless of the underlying facts based on any possibility of truth. This argument fundamentally conflicts with the standard under FRCP 12(b)(6) and ignores the consistent precedent from the Second Circuit and Supreme Court stating that false allegations in a lawsuit can be the basis of a FDCPA claim.

First, Defendants' argument rests precariously on the feeble "if" of the claims of fraudulent conveyance in the Verified Complaint being successful. But as Defendants acknowledge in their own brief: "At the time Defendants filed the Verified Complaint, they knew they would not be able to prove the claim of fraudulent conveyance[…and] did not have a good faith basis for believing Plaintiff had engaged in a fraudulent conveyance." MTD, p. 7. Defendants cannot create their own facts for the purpose of this Motion that the fraudulent

conveyance claims could have been successful – Plaintiff's Complaint states that they could not have been, that they were not made on a good faith basis, and most importantly and totally ignored by Defendants, Ms. Remler did not commit fraudulent conveyance.

Defendants try to bolster their argument by attacking Plaintiff's allegations of Defendants' lack of good faith basis for the fraudulent conveyance claims as being mere "labels and conclusions." MTD, p. 8 *quoting Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 573 (2007). To make this argument, Defendants are forced to baldly assert that Plaintiff's allegations are "unsupported" and ignore the considerable pattern and practice evidence that Plaintiff alleges to substantiate that Defendants make the fraudulent conveyance claims as a matter of course without a good faith basis. **Exhibit 1**, ¶¶ 90-149. The comparison of the present case to *Lena v. CACH, LLC,* No. 13 C 01805, 2015 WL 4692443, at *2 (N.D. Ill. Aug. 6, 2015) is inapt – in that case "the only supporting fact offered by plaintiff was the fact that the defendant had voluntarily dismissed its lawsuit against her" (MTD p. 9), whereas here Plaintiff's supporting facts include the lack of factual allegations in the Verified Complaint, the use of "upon information and belief" (**Exhibit 1** ¶¶ 36-39), the lack of factual allegations in the Opposition to the MTD (**Exhibit 1** ¶ 73 *citing* **Exhibit O**), and the 110 complaints that Cona filed against other consumers with identical threadbare allegations of fraudulent conveyance (**Exhibit 1,** ¶¶ 104-107). Defendants do not address the 110 other complaints with identical boilerplate fraudulent conveyance claims because the implications of that pattern is facially obvious – Defendants do not perform a meaningful attorney review and bring fraudulent conveyance claims on a good faith factual basis but rather bring fraudulent conveyance claims without a good faith basis, regardless of the facts, in order to make third parties liable and claim attorney's fees under § 276-a. *Id.* ¶¶ 106-107 ("These 110 complaints further evince that Cona had no good faith basis for its

frivolous claim that Ms. Remler committed fraudulent conveyance, but instead made the allegations as a matter of course to secure a third party source of payment[…and] attorney's fees"). Unlike Defendants' fraudulent conveyance allegations or the allegations of the plaintiff in *Lena*, Plaintiff's allegations are substantiated through an extensive review of Defendants' pattern and practice in addition to the language of the Verified Complaint and Opposition to MTD.

The Western District of New York persuasively distinguished what frivolous debt collection litigation cases do and do not survive motions to dismiss in *Hackett v. Midland Funding LLC,* Case No. 18-cv-64621-FPG, 2019 WL 1902750 at *5 (W.D.N.Y. April 29, 2019). The court in *Hackett* noted that frivolous litigation claims under the FDCPA survived dismissal in *Samuels v. Midland Funding, LLC,* 921 F. Supp. 2d 1321 (S.D. Ala. 2013) because "the plaintiff in *Samuels* specifically denied owing any debt to Midland and alleged that Midland filed its collection case with 'full knowledge that it would not (and therefore could not) prove its claim." *Hackett,* 2019 WL 1902750 at *5. *Hackett* similarly cites to *Kuria v. Palisades Acquisition XVI, LLC,* 752 F. Supp. 2d 1293 (N.D. Ga. 2010) for its ruling in favor of a FDCPA claim "where plaintiff alleged that debt collector sued him on a debt he did not owe and that the debt collector thus could never prove, and that the debt collector knew when it filed suit that it lacked knowledge of the validity of the debt and never intended to verify the debt's validity." *Hackett,* 2019 WL 1902750 at *5. This distinction has been consistently followed by courts inside and outside the Second Circuit. *See also Tinsley v. Fairway Collections LLC,* Case No. C21-0260-JCC, 2021 WL 1691255, at *2 (W.D. Wash. April 29, 2021) ("The circumstances in this case are easily distinguishable from [*Eades* and similar cases] because Ms. Tinsley alleges that she did not owe the debt and therefore that the allegations in the complaint were false, not just that Fairway was unable to readily prove its allegations at the time the suit was filed"); *Mora*

*v. LVNV Funding LLC,* 408 F.Supp.3d 297, 301 (N.D.N.Y. 2019) (courts "have permitted FDCPA claims to proceed where the plaintiff alleged that the debt collector *knew* it could not prove the debt, or where the plaintiff pointed to specific falsities in the debt collector's supporting documentation") *quoting Rumfelt v. Midlanding Funding LLC,* No. 18-CV-6420-FPG, 2019 WL 1902784, at \*5 (W.D.N.Y. Apr. 29, 2019); *Woychesin v. Midland Funding, L.L.C.,* 2020 WL 5893815 (N.D. Ala. Oct. 5, 2020) (alleging that debt buyer filed "bogus" lawsuit to collect debt that plaintiff did not owe with no intention of proving case); *Mason v. Midland Funding L.L.C.,* 2017 WL 6994577 (N.D. Ga. July 27, 2017), *adopted,* 2017 WL 8186866 (N.D. Ga. Sept. 29, 2017) (collection lawyers should have known they could not prove their claims); *Hinten v. Midland Funding, L.L.C.,* 2013 WL 5739035 (E.D. Mo. Oct. 22, 2013) (alleging "that defendant commenced a judicial action with no intention of further prosecution, with insufficient evidence, and no intention of further seeking evidence"); *Mello v. Great Seneca Fin. Corp.,* 526 F. Supp. 2d 1020 (C.D. Cal. 2007) (claim that collection attorney unable to obtain evidence of plaintiff's alleged debt);

Like *Samuels* and *Kuria*, Plaintiff alleges that Defendants had knowledge that they could not and would not prove their claims of fraudulent conveyance and under Family Court § 412 against Ms. Remler. **Exhibit 1** ¶¶ 43, 52, 66, and 88. And these allegations of Defendants' knowledge are factually supported by allegations regarding:

- the lack of facts regarding the fraudulent conveyance and Family Court § 412 claims (**Exhibit 1** ¶¶ 39, 52 *citing* **Exhibit M**);

- the use of "upon information and belief" (**Exhibit 1** ¶¶ 36-39 *citing* **Exhibit M**);

- the doubling down by Defendants, when put on notice of their litigation being frivolous by the MTD, by filing an Opposition to the MTD (**Exhibit 1** ¶ 73 *citing*

**Exhibit O**);

- the lack of factual allegations in the Opposition to the MTD (**Exhibit 1 ¶** 73 *citing* **Exhibit O**);

- the failure by Defendants, after receiving the Opposition, to amend their Verified Complaint to add facts;

- the failure by Defendants, after Cona received the decision in *Franklin* dismissing the collection lawsuit based on the same frivolous fraudulent conveyance allegations, to amend their Verified Complaint to add facts;

- the 110 complaints that Cona filed against other consumers with identical threadbare allegations of fraudulent conveyance (**Exhibit 1, ¶¶** 104-107);

- and the failure to change their practice of bringing fraudulent conveyance claims without facts after the decision in *Apex Rehabilitation and Care Center v. Lisa Ann Ryan,* 607362/2018 (NY Sup. Feb. 27, 2019) held the boilerplate allegations "provided insufficient proof to establish that it has a meritorious claim" (**Exhibit 1 ¶¶** 144-149.

This evidence demonstrates that Defendants sued Ms. Remler on a debt she did not owe, since she did not commit fraudulent conveyance nor was liable under Family Court Act § 412, and that Defendants thus could never prove, and Defendants knew when they filed suit that they lacked knowledge of the validity of the debt and never intended to verify the debt's validity. Otherwise Defendants would have alleged the claims without the disclaimer of "upon information and belief," or at the very least alleged or proffered such proof of the claims once Ms. Remler filed her Motion to Dismiss.

Cona Defendants skipped to one particular way a communication can be deceptive, the

"two or more different meanings, one of which is inaccurate" analysis, and thus neglected the many other ways debt collection conduct can be deceptive under the guiding principal of 15 U.S.C. § 1692e: "Whether a collection letter is 'false, deceptive, or misleading' under the FDCPA is determined from the perspective of the objective 'least sophisticated consumer.'" *Easterling v. Collecto, Inc.,* 692 F.3d 229, 233 (2d Cir. 2012) *quoting Clomon v. Jackson,* 988 F.2d 1314, 1318 (2d Cir.1993). A clear analogue to Plaintiff's 1692e claims here is the case law on filing time-barred lawsuits, which state violations under 1692e because the filing of a lawsuit or "the threatening of a lawsuit which the debt collector knows or should know is unavailable or unwinnable by reason of a legal bar such as the statute of limitations is the kind of abusive practice the FDCPA was intended to eliminate." *Cameron v. LR Credit 22,* LLC, 998 F. Supp. 2d 293, 300 (S.D.N.Y. 2014) *quoting Beattie v. D.M. Collections, Inc.,* 754 F.Supp. 383, 393 (D.Del. 1991). The same kind of misrepresentation was made by Defendants to Ms. Remler – by filing the Verified Complaint and later the Opposition to the MTD, they told her that they could make her liable for a debt that they knew they did not have any facts to support. That is a communication and conduct that is deceptive, unfair, and unconscionable. *Villalba v. Houslanger & Assocs., PLLC*, No. 19CV4270PKCRLM, 2022 WL 900538 at *9-10 (E.D.N.Y. Mar. 28, 2022).

The least sophisticated consumer is certainly not an attorney. *E.g Russell v. Equifax A.R.S.,* 74 F.3d 30, 34 (2d Cir. 1996) ("the test is how the least sophisticated consumer —one not having the astuteness of a "Philadelphia lawyer" or even the sophistication of the average, everyday, common consumer —understands the notice he or she receives"). Cona Defendants would like this Court to read the deceptive Verified Complaint as lawyers read it – as only allegations that have yet to be proven true. Even this interpretation neglects the fact that, if a

consumer understood the assertions in the Verified Complaint as allegations, honest allegations have a factual basis whereas deceptive ones have no factual basis (**Exhibit 1** ¶ 47). *Samms v. Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP*, 163 F. Supp. 3d 109, 116 (S.D.N.Y. 2016) ("A reasonable consumer reading Abrams's request for attorneys' fees would likely be misled into believing that there was some basis for the request"). And at minimum the least sophisticated consumer reads the plain language of communications from debt collectors rather than applying a sophisticated legal gloss to them. *Spira v. Ashwood Fin., Inc.*, 358 F. Supp. 2d 150, 157, fn. 5 (E.D.N.Y. 2005) (looking at "plain language" of collection letter); *Jackson v. POM Recoveries, Inc.*, No. 17CV6118AMDAKT, 2020 WL 4926259, at *5 (E.D.N.Y. Aug. 21, 2020) ("the plain language of the letter refutes the plaintiff's claim that the least sophisticated consumer could be tricked"); *Teitelbaum v. I.C. Sys., Inc.*, No. 20CV3272PKCLB, 2021 WL 2206740, at *3 (E.D.N.Y. June 1, 2021) (looking at "plain language" of collection letter); *Bella v. Bureaus Inv. Grp. Portfolio No. 15 LLC*, No. 17CV6115ENVVMS, 2019 WL 2295840, at *2 (E.D.N.Y. May 30, 2019) ("whether the plain language of the collection letter is, or could be, misleading to the hypothetical least sophisticated consumer").

The plain language here is clearly misleading: "the Resident-Defendant wrongfully conveyed his assets and income to the Defendant, JANE REMLER-BLANK, without fair consideration, in order to prevent Plaintiff from recovering monies due it for services provided to the Resident-Defendant and said conveyances were accepted by the Defendant" (**Exhibit M**, ¶ 17); "the conveyances by the Resident-Defendant to [Jane Remler] were accepted by [Jane Remler] with her knowledge and with her wrongful and fraudulent intent and belief" (*Id.* ¶ 22); "By reason of the aforementioned fraudulent conveyances, and by virtue of the actual intent of

the Resident-Defendant and the Defendant, JANE REMLER-BLANK, to hinder, delay or defraud Plaintiff, Plaintiff has incurred attorneys' fees and, pursuant to the provisions of DCL Section 276-a, the Defendant is chargeable with same in an amount the Court shall fix as reasonable" (**Exhibit M**, ¶ 25); "I have read the annexed COMPLAINT, know the contents thereof, and the same are true to my knowledge, except those matters therein which are stated to be alleged on information and belief, and as to those matters I believe them to be true based upon my own investigation and knowledge, as well as conversations with my client and review of documents provided to me in connection herewith" (*Id.*, p. 10). The least sophisticated consumer would read the allegation in the Verified Complaint that her husband had made fraudulent conveyances to her, that she had accepted them with intent to defraud Riverside, that she was liable for attorney's "in an amount the Court shall fix as reasonable," and that a lawyer had affirmed that the statements were "based upon [the lawyer's] own investigation and knowledge." Such a least sophisticated consumer could reasonably believe that there was some factual basis to the allegations against her, even if she believed them to be mistaken or otherwise untrue. After all, the least sophisticated consumer may believe she did not commit fraudulent conveyance, but she could reasonably believe that Cona Defendants might still have some legal manner to get the Court to rule that she had committed fraudulent conveyance. After all the Cona Defendants signed a sworn verification stating other that the law firm had "investigation and knowledge" including "documents," and thus had legal basis to obtain a judgment for $19,140, plus the attorney's fee.

Notably a similar argument about hypothetical entitlement to attorney's fees was made unsuccessfully by the defendants in *Samms*: "Abrams argues that its request for fees was permitted by law because the New York Supreme Court has the power to award attorney's fees

for frivolous conduct." *Samms,* 163 F. Supp. 3d at 114. The court found this argument unpersuasive because there was "no legal basis to request such sanctions." *Id.* Similarly, Defendants had no factual or legal basis to allege that Ms. Remler had committed fraudulent conveyance, and do not even bother to attempt to provide one or rebut the pattern and practice Plaintiff alleges of Defendants' routinely bringing fraudulent conveyance claims without a factual basis.

### 2. Defendants do not address Plaintiff's claims under § 1692e for the deceptive allegations under Family Court Act § 412 or misrepresenting a meaningful attorney review.

Defendants neglect to address the separate claims under § 1692e made by Plaintiff for Defendants' other misrepresentations in the Summons With Notice, Verified Complaint, and Opposition to MTD: that Plaintiff was liable for the debt under Family Court Act § 412 and that Defendants had performed a meaningful attorney review of the filings. Like the claims of fraudulent conveyance, Defendants have a pattern and practice of making Family Court Act § 412 claims whenever a resident and their spouse are targeted for collection, which evinces that Defendants do not bring these claims in good faith, including the claim against Ms. Remler, but rather bring them to make an innocent third party liable for a debt that they otherwise would not owe. Simply put, Defendants falsely represent to consumers that their marriage to a debtor alone can make them liable for their spouse's nursing home debt, which in the State of New York is not true. And as Plaintiff noted in her Complaint (**Exhibit 1 ¶¶ 115-122**), a New York court reviewing a similar case in *Jopal Bronx LLC d/b/a Workmen's Circle Multicare Center v. Montilla, et al.,* No. 160192/2019, 2021 WL 3492240 (N.Y. Sup. July 30, 2021) concluded that the failure by the nursing home and its law firm to plead "essential elements" of the claim "indicates that plaintiff either failed to conduct a rudimentary investigation and routinely sues

both the patient and the patient's spouse for payment or, after an investigation revealed the absence of the essential elements, instituted the action against Ms. Montilla anyway." *Id.* at *2. *Montilla* went on to hold that "plaintiff's or its attorney's conduct was completely without merit, warranting the imposition of sanctions…[p]articularly when plaintiff failed to discontinue its claims against Ms. Montilla after her attorney advised plaintiff's attorney, in writing, that its claims against Ms. Montilla were meritless, requested that plaintiff discontinue them, and warned that, if it did not, Ms. Montilla would seek her attorney's fees, sanctions are justified." *Id.* And as Plaintiff noted in her Complaint (**Exhibit 1** ¶ 122), the present case is actually more egregious since in the Verified Complaint against Ms. Remler and the complaints against other consumers it only alleged that the consumer was married to the resident whereas in the *Montilla* case they also alleged that the medical necessaries "were furnished on the credit of DEFENDANT." *Montilla,* 2021 WL 3492240 at *1.

The FDCPA expressly prohibits "[t]he false representation or implication that any individual is an attorney or that any communication from an attorney." 15 U.S.C. § 1692e(3). A communication purporting to be made by an attorney will violate this section if there has not been "some degree of attorney involvement." *Musah v. Houslanger & Assocs.*, PLLC, 962 F. Supp. 2d 636, 640 (S.D.N.Y. 2013) *quoting Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 301 (2d Cir.2003) ("*Miller I*"). Whether there has been "some degree" is determined by "whether the attorney's examination of the case file was adequate to permit determination of 'whether [the debtor] *was or was not obligated to pay the debt.*'" *Id.* at 641 *quoting Miller I,* 321 F.3d at 305 [emphasis added]. In *Diaz*, this Court found that Plaintiff stated a claim under 1692e for Defendants' false representation of meaningful attorney review of a time-barred lawsuit. *Diaz v. Portfolio Recovery Assocs., LLC*, No. 10 CV 3920 MKB CLP, 2012 WL 1882976, at *4

(E.D.N.Y. May 24, 2012). And in *Baltazar v. Houslanger & Assocs., PLLC*, No. 16-4982 (JMA) (AKT), 2018 WL 3941943, at *3 (E.D.N.Y. Aug. 16, 2018), *report and recommendation adopted*, No. 16CV04982JMAAKT, 2018 WL 4781143 (E.D.N.Y. Sept. 30, 2018), the court found a lack of meaningful attorney review where a debt collection law firm attempted to collect on a third party judgment without a copy of the judgment, the application for default judgment, the affidavit of service, or the Complaint.

Cona represented to Ms. Remler in the Verified Complaint that they had performed a meaningful review of its allegations and believed them to be truthful, including that Ms. Remler committed fraudulent conveyance and was thus liable for the putative debt and attorney's fees. **Exhibit 1**, ¶ 60. Specifically, they represented that Cona had "read the annexed COMPLAINT, know the contents thereof, and the same are true to my knowledge, except those matters therein which are stated to be alleged on information and belief, and as to those matters I believe them to be true based upon my own investigation and knowledge, as well as conversations with my client and review of documents provided to me in connection herewith." **Exhibit 1**, ¶ 33 *quoting* **Exhibit M**, p. 10. This representation is in addition to other less-direct representations of meaningful attorney involvement – the signature of an attorney and the filing of the lawsuit itself. In other words, Cona Defendants both made direct (via the Verification language) and indirect (via the attorney signature and the communication being a lawsuit) misrepresentations of attorney involvement and independent legal determination. It is facially apparent that "Cona Defendants failed to make a meaningful attorney review of the facts and circumstances of the case sufficient to determine whether there was factual basis for the demand for attorney's fees" (**Exhibit 1**, ¶ 67) because:

- the lack of facts regarding the fraudulent conveyance and Family Court § 412

claims (**Exhibit 1 ¶¶** 39, 52 *citing* **Exhibit M**);

- the use of "upon information and belief" (**Exhibit 1 ¶¶** 36-39 *citing* **Exhibit M**);

- the doubling down by Defendants, when put on notice of their litigation being frivolous by the MTD, by filing an Opposition to the MTD (**Exhibit 1 ¶** 73 *citing* **Exhibit O**);

- the lack of factual allegations in the Opposition to the MTD (**Exhibit 1 ¶** 73 *citing* **Exhibit O**);

- the failure by Defendants, after receiving the Opposition, to amend their Verified Complaint to add facts;

- the failure by Defendants, after Cona received the decision in *Franklin* dismissing the collection lawsuit based on the same frivolous fraudulent conveyance allegations, to amend their Verified Complaint to add facts;

- the 110 complaints that Cona filed against other consumers with identical threadbare allegations of fraudulent conveyance (**Exhibit 1, ¶¶** 104-107);

- and the failure to change their practice of bringing fraudulent conveyance claims without facts after the decision in *Apex Rehabilitation and Care Center v. Lisa Ann Ryan,* 607362/2018 (NY Sup. Feb. 27, 2019) held the boilerplate allegations "provided insufficient proof to establish that it has a meritorious claim" (**Exhibit 1 ¶¶** 144-149.

**B.** **The Filing of the Collection Lawsuit and the Opposition to Ms. Remler's MTD State Claims under § 1692f.**

Defendants argue that Plaintiff has failed to state a claim under 15 U.S.C. § 1692f because the misconduct is not "beyond which he also asserts violates § 1692e of the FDCPA."

MTD p. 9. Cona Defendants' authority for this, which they falsely refer to as "controlling case law," is a block quote from a Southern District of New York decision which in turn relies on another SDNY decision, a EDNY decision, and a ED Pa. decision. This is facially not "controlling case law": none of these decisions are binding on this Court and Cona Defendants should immediately correct their misrepresentation to the Court.

It is a particularly egregious misrepresentation of what the controlling case law is because there is controlling Second Circuit case law on this issue. *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP,* 875 F.3d 128 (2d Cir. 2017). In *Arias,* the defendant debt collector argued that sections 1692e and 1692f are "mutually exclusive." *Id.* at 135. The Second Circuit disagreed, stating that debt collection practices "'could be unfair without necessarily being deceptive,' could be deceptive without being unfair, or could be both deceptive and unfair." *Id.* at 136 (collecting cases). And the Court noted that the Second Circuit had already previously held that the same misconduct can violate both 1692e and 1692f. *Id.* at 135 *citing Sykes v. Mel S. Harris & Assocs., LLC,* 780 F.3d 70, 82, 87 (2d Cir. 2015).

15 U.S.C. § 1692f prohibits "practices that give the debt collector an unfair advantage over the debtor or are inherently abusive." *Arias,* 875 F.3d at 136. In addition to prohibiting specific practices, 1692f has a "catchall provision that provides a cause of action" for conduct "marked by injustice, partiality, or deception." *Okyere v. Palisades Collection, LLC (Okyere II)*, 961 F. Supp. 2d 522, 529, 531 (S.D.N.Y. 2013). In *Arias,* the unfair litigation conduct at issue was requiring the *pro se* consumer to come to a single unnecessary hearing. *Arias,* 875 F.3d at 133-134. In *Okyere II*, the Court cited to a Ninth Circuit decisions finding 1692f violation similar to what Defendants did to Plaintiff: "filing an application for a writ of garnishment when the plaintiff did not owe any money." *Okyere II,* 961 F. Supp. 2d at 531 *citing Fox v. Citicorp Credit*

*Servs., Inc.*, 15 F.3d 1507, 1517 (9th Cir.1994). Several other decisions in the Second Circuit has found violations of 1692f for unfair attempts to collect debts not owed, amounts not available by law, and failure to perform a meaningful attorney review. *Diaz v. Portfolio Recovery Assocs., LLC*, No. 10 CV 3920 ERK, 2012 WL 661456, at *12 (E.D.N.Y. Feb. 28, 2012), *report and recommendation adopted*, No. 10 CV 3920 MKB CLP, 2012 WL 1882976 (E.D.N.Y. May 24, 2012) (failure to perform meaningful attorney review of complaint resulting in the filing of time-barred lawsuits stated a claim under 1692f); *Somerset v. Stephen Einstein & Assocs., P.C.*, 351 F. Supp. 3d 201 (E.D.N.Y. 2019) (executing on known-fraudulent judgment and failing to perform a meaningful attorney review of income execution violated 1692f); *Baltazar v. Houslanger & Assocs., PLLC*, No. 16-4982 (JMA) (AKT), 2018 WL 3941943, at *3 (E.D.N.Y. Aug. 16, 2018), *report and recommendation adopted*, No. 16CV04982JMAAKT, 2018 WL 4781143 (E.D.N.Y. Sept. 30, 2018) (continuing to attempt to collect on known-fraudulent judgment violates 1692f).

Cona Defendants' misconduct described above violates both 1692e and 1692f. There are few debt collection practices as unconscionable as the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law," which is why it expressly enumerated in the statute. *See* 15 U.S.C. § 1692f(1). Cona Defendants sought to collect both the whole debt and attorney's fees from Ms. Remler without a real legal basis, instead fabricating a false basis, fraudulent conveyance, to give the impression to Ms. Remler and the court that they could legally collect these amounts. This is the epitome of what *Arias* refers to as the "interplay" between 1692e and 1692f – Cona Defendants engaged in unfair debt collection conduct and then sought to hide the unfairness of that conduct by using deception. As the Second

Circuit recognized, unfair debt collection conduct is not fair just because the conduct also involved deception.

### C. The Southern District of New York's Decision in *Franklin* Is Not Binding Authority and Was Decided Incorrectly.

Defendants point to the recent decision by the Southern District of New York in *Franklin v. Cona Elder Law, PLLC,* 2022 WL 268628 (S.D.N.Y. Jan. 28, 2022) dismissing the FDCPA against Cona Defendants in that case, to cut against Plaintiff's citation to their misconduct against the late Alphonso Franklin[3] as well as provide authority for dismissal of the present case. Defendants' assertions about Plaintiff's "reliance" on *Franklin* are wrong – *Franklin* was just one example of 110 complaints making fraudulent conveyance allegations without a factual basis and a decision by the Southern District of New York is not binding authority on this Court. However, given that *Franklin* is an almost identical fact pattern with overlapping Defendants, this Court should consider whether the Southern District decision is persuasive authority. In short, Plaintiff urges this Court to decide to the contrary of *Franklin* based on a more nuanced reading of the Second Circuit precedent in *Eades*.

The primary error by Judge Cote was her reliance on *Eades v. Kennedy, P.C. Law Offices,* 799 F.3d 161, 172 (2d Cir. 2015). On first blush, *Eades* may seem similar to both this case and *Franklin,* but it is distinguishable for the same reason that Defendants' other authority, *Lena,* 2015 WL 4692443, is distinguishable – Plaintiff's allegations here that Defendants lacked a factual basis are factually robust rather than conclusory. In *Eades,* "Plaintiffs failed to allege that Kennedy's claims were frivolous or baseless-for example, that Ms. Pike fulfilled her

---

[3] Alphonso Franklin passed away around the time of the decision dismissing the FDCPA claims. His son, who has retained the undersigned firm, is in the process of substituting into the case, after which he will be moving for

financial obligations to Corry Manor, that Mr. Pike did not sign the admission agreement, or even that the Plaintiffs are not "debtors" under Pennsylvania's fraudulent transfer statute." *Id.*

This is clearly distinguishable from the present case. *E.g.* Exhibit 1 ¶¶ 42, 48, 65, 84, 87, 106, 107, 121 (all expressly referring to the claims against Ms. Remler as "frivolous") and ¶¶ 29, 41, 43, 52-54, 70 (all expressly referring to the claims against Ms. Remler as "baseless"). And more importantly than the actual words "baseless" and "frivolous" Plaintiff provides numerous facts establishing the baselessness of the claims:

- the lack of facts regarding the fraudulent conveyance and Family Court § 412 claims (**Exhibit 1 ¶¶** 39, 52 *citing* **Exhibit M**);

- the use of "upon information and belief" (**Exhibit 1 ¶¶** 36-39 *citing* **Exhibit M**);

- the doubling down by Defendants, when put on notice of their litigation being frivolous by the MTD, by filing an Opposition to the MTD (**Exhibit 1 ¶** 73 *citing* **Exhibit O**);

- the lack of factual allegations in the Opposition to the MTD (**Exhibit 1 ¶** 73 *citing* **Exhibit O**);

- the failure by Defendants, after receiving the Opposition, to amend their Verified Complaint to add facts;

- the failure by Defendants, after Cona received the decision in *Franklin* dismissing the collection lawsuit based on the same frivolous fraudulent conveyance allegations, to amend their Verified Complaint to add facts;

reconsideration of the Court's decision.

- the 110 complaints that Cona filed against other consumers with identical threadbare allegations of fraudulent conveyance (**Exhibit 1, ¶¶** 104-107);

- and the failure to change their practice of bringing fraudulent conveyance claims without facts after the decision in *Apex Rehabilitation and Care Center v. Lisa Ann Ryan,* 607362/2018 (NY Sup. Feb. 27, 2019) held the boilerplate allegations "provided insufficient proof to establish that it has a meritorious claim" (**Exhibit 1 ¶¶** 144-149.

Judge Cote mistook the allegations in *Franklin* as accusing Cona of "fil[ing] and pursu[ing] the lawsuit without sufficient evidence." *Franklin, quoting Eades v. Kennedy, PC L. Offs.,* 799 F.3d 161, 172 (2d Cir. 2015). But that was not what was alleged in *Franklin,* nor what is alleged in this case. Defendants make baseless and frivolous claims of fraudulent conveyance and under Family Court Act § 412 without any factual basis, as established by the language used in their filings and by their pattern and practice of identical baseless claims in other complaints. Another Second Circuit decision holds that these kind of allegations do state a claim under the FDCPA: *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP,* 875 F.3d at 138. In *Arias,* the debt collection law firm "filed an objection to Arias's claim of exemption, asking the State court to find that the funds in Arias's account were not exempt from garnishment and, in the alternative, for a hearing and a protective order to prevent the release of the funds." *Id.* at 134. The debt collection law firm "had no good faith basis to object to his exemption claim because it knew, based on the bank statements he provided, that all of the funds in his account were exempt from garnishment." *Id.*

The Court held that "a debt collector engages in unfair or unconscionable litigation conduct in violation of section 1692f when, as alleged here, it in bad faith unduly prolongs legal

proceedings or requires a consumer to appear at an unnecessary hearing." *Id.* Like in *Arias,* the Defendants here knew that they had no facts to support their allegations against Ms. Remler, and Ms. Remler put them on additional notice of this lack of factual basis in her Motion to Dismiss, but the Defendants, like the firm in *Arias,* nevertheless filed an Opposition to the Motion to Dismiss and "in bad faith unduly prolong[ed] legal proceedings." **Exhibit 1 ¶¶** 72-74 *citing* **Exhibits N, O** and **P.** Most importantly for this case, the Second Circuit cites as authority for the FDCPA applying to baseless litigation *Eades*, because while *Eades* dismissed the claims at issue, its analysis "suggest[s] that the filing of a 'frivolous or baseless' complaint could violate section 1692f(1).'" *Id. citing Eades,* 799 F.3d at 172. Thus, as recognized by the Second Circuit itself in *Arias,* the *Eades* case actually supports finding that a FDCPA claim survives dismissal where, like here, there are substantive factual allegations that Defendants filed a frivolous or baseless complaint against the Plaintiff. Given that *Arias* is a Second Circuit holding decided after *Eades*, its interpretation of *Eades* "suggesting that the filing of a 'frivolous or baseless' complaint could violate section 1692f(1)" should be given more weight than the *Franklin* case, which is not binding on this Court and misinterpreted *Eades*.

Arias was recently applied in this Court in the case *Villalba v. Houslanger & Assocs., PLLC*, No. 19CV4270PKCRLM, 2022 WL 900538 (E.D.N.Y. Mar. 28, 2022). *Villalba* concerned the litigation of a collection action by the defendants for years despite the defendants knowing that the judgment they were collecting on had been obtained with a false affidavit of service. *Id.* at *6. Like in the present case, the defendants in *Villalba* were given additional notice of the impropriety of their conduct by a motion (though in that case an order to show cause rather than a motion to dismiss), but in response "Defendants litigated the case for another eleven months without taking any 'steps to obtain additional evidence to oppose the order to show

cause.'" *Id.* at *8. Like the Defendants in the present case did with their Opposition to the MTD (**Exhibit 1**, ¶ 73 *citing* **Exhibit O**), the defendants in *Villalba* used adjournments to "in bad faith unduly prolong[ed] legal proceedings or require[d] a consumer to appear at an unnecessary hearing." *Villalba,* 2022 WL 900538, at *8 *quoting Arias,* 875 F.3d at 138. And the court in *Villalba* appeared to find these allegations particularly compelling in the context of the defendants, like the Defendants here, committing the same FDCPA violations potentially against dozens of other consumers: "As it stands, the allegations in the Amended Complaint paint a grotesque picture of outrageously abusive and disreputable conduct by Defendants as to Galeas and presumably many others whose debts Defendants purchased from LR Credit." *Villalba,* 2022 WL 900538, at *8 fn. 10. "[A] grotesque picture of outrageously abusive and disreputable conduct by Defendants" as to Ms. Remler and presumably many others who faced the same fact-less allegations of fraudulent conveyance and Family Court Act § 412 is a pertinent description of the facts of this case.

## VI.    ARGUMENT AS TO STATE LAW CLAIMS

Plaintiff brings three state law claims against Defendants: (1) Judiciary Law § 487 against Cona Defendants, (2) GBL § 349 against all Defendants, and (3) gross negligence against all Defendants. Defendants have moved to dismiss all the state law claims against them. MTD, pp. 12-20. For the following reasons, the Motion should be denied in full.

### A.  Plaintiff Has Stated a Claim against Cona Defendants for Violating Judiciary Law § 487.

#### 1.  Plaintiff's allegation that Cona Defendants acted with intent is supported by their pervasive engagement in the same conduct and their continued litigation of their baseless claims.

Cona Defendants first argue that Judiciary Law § 487 "focuses on the attorney's intent to

deceive." Cona MTD, p. 13 *quoting Amalfitano v. Rosenberg,* 12 N.Y.3d 8, 14, 903 N.E. 2d 265 (2009). This element is straightforward. Plaintiff alleges several times that Cona Defendants acted with intent to deceive. **Exhibit 1**, ¶¶ 43 ("when Defendants filed suit for fraudulent conveyance they knew they had no evidence of fraudulent conveyance; they knew they would not be able to prove on the merits their allegations of fraudulent conveyance; and they had no intention of proving on the merits their allegations of fraudulent conveyance") and 52 ("[Defendants] knew when they filed suit that they did not have and would not be able to obtain proof for these elements [of Family Court Act § 412], and had no intention of doing so"). Similar conduct has been found to violate N.Y. Jud. Law § 487 by New York courts. *Diaz v. Portfolio Recovery Assocs., LLC*, No. 10 CV 3920 (ERK), 2012 WL 661456 (E.D.N.Y. Feb. 28, 2012), *report and recommendation adopted*, No. 10 CV 3920 (MKB) (CLP), 2012 WL 1882976 (E.D.N.Y. May 24, 2012) (lack of meaningful attorney review and suing on time-barred debt); *Sykes v. Mel Harris & Assocs., LLC*, 757 F. Supp. 2d 413, 428-29 (S.D.N.Y. 2010) (fraudulent affidavits of merit for collection lawsuits); *Carroll v. U.S. Equities Corp.*, No. 118CV667TJMCFH, 2019 WL 4643786, at *14 (N.D.N.Y. Sept. 24, 2019) ("filing deceptive and misleading affirmations in obtaining a default judgment"). Not only has Plaintiff alleged that Cona Defendants acted with intent, but further alleged facts evincing that Cona Defendants acted with intent, such as the use of "upon information and belief" for the fraudulent conveyance claims" and the material benefits of making a third party liable for the debt and attorney's fees.

> **2. Cona Defendants filing at least 110 complaints alleging fraudulent conveyance without providing a factual basis is a chronic and extreme pattern of legal delinquency.**

Cona Defendants also argue that Plaintiff's claims under Judiciary Law § 487 fail because Plaintiff has not alleged a "chronic or an extreme pattern of wrongful behavior." Cona

MTD, p. 14 *citing Kaminsky v. Herrick, Feinstein LLP,* 59 A.D.3d 1, 13 (1st Dept. 2008), *appeal denied,* 12 N.Y.3d 715 (2009). As an initial matter, Plaintiff disputes that this is a requirement of Judiciary Law § 487. While Cona Defendants claim "New York case law shows" this requirement (MTD p. 15), the Second Circuit notes that such a "requirement appears nowhere in the text of the statute, however, and other courts have found attorneys liable under the statute for a single intentionally deceitful or collusive act." *Id.* at 123-124 *citing Izko Sportswear Co., v. Flaum,* 809 N.Y.S.2d 119, 122, 25 A.D.3d 534, 537 (2d Dep't 2006) (misrepresentation of conflict); *NYAT. Operating Corp. v. Jackson, Lewis, Schnitzler & Krupman,* 741 N.Y.S.2d 385, 386, 191 Misc.2d 80, 82 (N.Y.Sup.Ct.2002) (single instance of lying under oath).

In any event, Ms. Remler has plead a "chronic or an extreme pattern of wrongful behavior," wherein the deceit was "extreme" or "egregious," namely that she is one of at least 110 consumers targeted by complaints that allege, without factual basis, that family members or other third parties have committed fraudulent conveyance and thus are liable for nursing home debts and Cona Defendants' attorney's fees. 110 instances is certainly chronic, and the deception at issue is extreme and egregious because (1) it contumaciously and openly subverts federal law meant to protect these parties, namely 42 U.S.C. §§ 1396r *et seq.* and 42 C.F.R. § 483.15 (**Exhibit 1**, ¶¶ 94-95), (2) it can "make consumers less likely to challenge the allegations of the complaint, and more likely to default or to pay the debt" (*Id.* ¶ 124), (3) it concerns medical debts where the consumer is often unaware of what the actual cost of the putative debt should be (*Id.* ¶ 125), (4) it concerns nursing home debts, which arise from a complicated web of coverage by Medicare and other institutions, often at different levels during different periods of residency (*Id.*), and (5) it is a business model built on immiserating innocent family members of nursing home residents (*Id.* ¶ 132).

38

Defendants argue that the pattern and practice evidence is unavailing because "Plaintiff makes no allegation that any of those lawsuits were dismissed for failure to state a cause of action." MTD, p. 15. Simply put, an allegation does not only become baseless once it has been dismissed; whether an allegation is baseless can be gleaned by what facts, if any, are alleged to support it and the language of the allegations. Plaintiff alleges that the 110 complaints all have "identical boilerplate and conclusory allegations made in them." **Exhibit 1**, ¶ 99. This boilerplate language includes those 110 claims for fraudulent conveyance in the other complaints being made without "provid[ing] a *single* fact" (*Id.* ¶ 104) and alleging them entirely "upon information and belief" (*Id.* ¶ 105).

### B. Plaintiff Has Stated a Claim against Defendants for Violating GBL § 349.

#### 1. Defendants' conduct was consumer-oriented.

Defendants argue that Plaintiff has failed to allege that their conduct was consumer-oriented as required to state a claim for GBL § 349. MTD pp. 16-17. In order to state a claim under GBL § 349, an individual must demonstrate that the conduct at issue was consumer-oriented, that the defendant's act or practice is materially misleading or deceptive, and that the plaintiff was injured as a result. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (Ct. of Appeals 1995). In *Genesco Entertainment, a Division of Lymutt Industries, Inc. v. Koch*, 593 F. Supp. 743, 747 (S.D.N.Y. 1984), a concert promoter alleged that it had an oral contract with New York City to rent Shea Stadium for a concert, but that the City kept demanding more money and eventually cancelled the concert. The court dismissed the GBL § 349 claim because the rental of Shea Stadium was not a consumer transaction; it involved "complex arrangements, knowledgeable and experienced parties and large sums of money," which is "different in kind and degree from those that confront the

average consumer." *Id* at 752. The Court of Appeals has said that conduct was not consumer-oriented when it could never affect consumers, like the failure of an insurance company to cover $1.6 million in theft from the NYU bookstore. *New York University v. Continental Insurance Company*, 87 N.Y.2d 308 (1995).

The consumer-oriented requirement also "does not require a repetition or pattern of deceptive behavior." *Oswego*, 85 N.Y.2d at 25. Rather, "[a] claim brought under this statute must be predicated on an act or practice which is 'consumer-oriented,' that is, an act having the potential to affect the public at large, as distinguished from merely a private contractual dispute...." *Elacqua v. Physicians' Reciprocal Insurers*, 52 A.D.3d 886, 888 (3rd Dept. 2008) *citing Oswego*, 86 N.Y. 2d 20. The Court of Appeals noted that this holding was consistent with the legislative intent of GBL § 349 to stop consumer frauds at their initial stages rather than waiting for more persistent frauds to develop. *Id.* at 25.

Attempts by creditors to collect money that was not owed or misstate the amount owed has repeatedly been found to be consumer oriented. *See McCrobie v. Palisades Acquisition XVI, LLC,* 359 F. Supp. 3d 239, 255 (W.D.N.Y. 2019) (systematically collecting debts that Defendant "did not in fact have the legal right to collect that debt" was consumer-oriented); *Rozier v. Fin. Recovery Sys., Inc.*, No. 10-CV-3273 DLI JO, 2011 WL 2295116, at *5 (E.D.N.Y. June 7, 2011) (deceptive form debt collection letter was consumer-oriented); *Campbell v. MBI Assocs., Inc.,* 98 F. Supp. 3d 568, 588 (E.D.N.Y. 2015) ("sending form collection letters" that are deceptive can be consumer-oriented as opposed to letter sent particularly to one consumer by mistake); *Samms v. Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP*, 163 F. Supp. 3d 109, 116 (S.D.N.Y. 2016) (demand for attorney's fees in complaint that was not permitted by law or agreement consumer-oriented).

Defendants used baseless claims of fraudulent conveyance as a standard practice to make third parties liable for debts they did not owe and to charge them with attorney's fees. And to argue, as Defendants do, that the matter is a "private contract dispute" (MTD p. 16), when it was Defendants who fabricated fraudulent conveyance claims against Ms. Remler outside of the admission agreement with Mr. Blank, is beyond the pale. Defendants chose to make the alleged debt owed by Mr. Blank more than a private contract dispute, they cannot now seek shelter under that claim when they are finally held to account for what they have to done to dozens of consumers.

Defendants also argue that Plaintiff's GBL § 349 claims fail because Plaintiff "does not allege the defendants in [the 110 cases where fraudulent conveyance was alleged without factual basis] or any other group or groups of consumers were harmed by the act alleged by Plaintiff." MTD, p. 17. This misconstrues the consumer-oriented requirement – as aforementioned, the only injury which must be demonstrated is the one to Plaintiff, and GBL § 349 "does not require a repetition or pattern of deceptive behavior." *Oswego*, 85 N.Y.2d at 25. Defendants' conduct, of making baseless claims of fraudulent conveyance against Ms. Remler, is consumer-oriented because there are 110 complaints that have almost identical claims of fraudulent conveyance without factual basis, and thus it has "the potential to affect the public at large" *Elacqua*, 52 A.D.3d at 888 *citing Oswego*, 86 N.Y. 2d 20. Ms. Remler does not need to demonstrate that these consumers were injured – she just needs to demonstrate, and has demonstrated, that Defendants' deceptive conduct could potentially injure them. *See e.g. Hunter*, 2017 WL 5513636, at * 10 ("the existence of similar allegations of misconduct could support Plaintiff's argument that Palisades' actions in this case had the 'potential to affect similarly situated consumer'").

## 2. Defendants' conduct was materially deceptive.

Defendants argue that Plaintiff has failed to allege conduct that was material deceptive so-as to state a claim for GBL § 349. MTD, p. 17. The argument merely incorporate their arguments as to deception under the FDCPA by reference.

Again, Defendants' deceptive acts here were filing a lawsuit against Ms. Remler without basis, claiming that she committed fraudulent conveyance without basis, claiming entitlement to attorney's fees without a legal basis, claiming that she was liable for the debt under Family Court Act § 412, and falsely representing that Cona Defendants performed a meaningful attorney review of the Verified Complaint. While deception for GBL § 349 is analyzed under a "reasonable consumer" standard, it is a similar objective standard to the FDCPA "least sophisticated consumer" standard. *E.g. Hunter v. Palisades Acquisition XVI, LLC,* No. 16 CIV. 8779 (ER), 2017 WL 5513636, at *8 (S.D.N.Y. Nov. 16, 2017) *citing to Oswego*, 85 N.Y.2d at 26. As *Diaz* notes, an attorney serving a complaint to collect a debt may cause a consumer to "reasonably assume[] that an attorney had conducted a meaningful review of the complaint and was representing that the claims in the complaint were actionable." *Diaz v. Portfolio Recovery Assocs., LLC*, No. 10 CV 3920 ERK, 2012 WL 661456, at *14 (E.D.N.Y. Feb. 28, 2012), *report and recommendation adopted*, No. 10 CV 3920 MKB CLP, 2012 WL 1882976 (E.D.N.Y. May 24, 2012). As such, *Diaz* denied the motion to dismiss the meaningful attorney review claim under GBL 349 (as well as under the FDCPA and Judiciary Law 487). *Id.* 2012 WL 661456, at *13-15. Systematically collecting debts that Defendant "did not in fact have the leg right to collect" was deceptive to a reasonable consumer. *McCrobie,* 359 F. Supp. 3d at 255.

## C. Plaintiff Has Stated a Claim against Defendants for their Gross Negligence.

Defendants argue that the claim for gross negligence should be dismissed because

Plaintiff has not alleged conduct reaching the threshold required to plead gross negligence. MTD, p. 17-19. Defendants' failure to exercise even slight care and their reckless indifference to the rights of Ms. Remler and other consumers is evinced by the lack of meaningful attorney review of the Verified Complaint against Ms. Remler and the similar complaints alleging fraudulent conveyance and claims under Family Court Act § 412 without factual basis against other consumers. "Cona Defendants failed to make a meaningful attorney review of the facts and circumstances of the case sufficient to determine whether there was, not just fraudulent conveyance, but specifically fraudulent conveyance with actual intent sufficient to justify attorney's fees under DCL § 276-a" (**Exhibit 1**, ¶ 68) because "Ms. Remler did not commit fraudulent conveyance and Defendants had no evidence that she did, there was no factual basis for the claim of fraudulent conveyance against Ms. Remler, and that claim for fraudulent conveyance was the only legal basis stated for seeking attorney's fees against Ms. Remler." *Id.* ¶ 65. The failure to provide a factual basis for claims of fraudulent conveyance in complaints 110 separate times is about as powerful evidence as could exist of failure to exercise even slight care and reckless disregard for consumers' rights. If Defendants had exercised even slight care and regard for the rights of consumers like Ms. Remler, they would presumably have determined whether a factual basis existed for fraudulent conveyance claims and then, if one did, include it in a complaint making a claim for fraudulent conveyance, but instead every single time from 2017 to present, every single one of the 110 separate times, they alleged fraudulent conveyance without a factual basis. *Id.* ¶ 104.

## VII.    CONCLUSION

Plaintiff respectfully requests that the Defendants' Motions to Dismiss be denied in their entirety.

Dated: Brooklyn, New York

April 29, 2022

Respectfully submitted,
/s/
Ahmad Keshavarz
Emma Caterine
The Law Office of Ahmad Keshavarz
Attorneys for Plaintiff Jane Remler
16 Court St., 26th Floor
Brooklyn, NY 11241-1026
Phone: (718) 522-7900
Fax: (877) 496-7809
ahmad@NewYorkConsumerAttorney.com

## CERTIFICATE OF SERVICE

I hereby certify that on this date I emailed the foregoing to the following pursuant to the Individual Rules of Judge Ross:

> Defendants by and through their attorneys of record
> Jeoffrey Leonard, Esq.
> LEWIS BRISBOIS BISGAARD & SMITH, LLP
> One Riverfront Plaza, Suite 800
> Newark, NJ 07102
> Jeffrey.leonard@lewisbrisbois.com


Date:  April 29, 2022
Brooklyn, NY
/s/
Emma Caterine