UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X
:
JANE REMLER,                                                        :   21-CV-5176 (ARR) (LB)
                                                                    :
          *Plaintiff*                                               :
   -against-                                                        :   NOT FOR ELECTRONIC
                                                                    :   OR PRINT PUBLICATION
CONA ELDER LAW, PLLC f/k/a GENSER, DUBOW,                           :
GENSER & CONA, LLP, and                                             :   **OPINION & ORDER**
150 RIVERSIDE OP. LLC d/b/a THE RIVERSIDE                           :
PREMIER REHABILITATION AND HEALING                                  :
CENTER,                                                             :
                                                                    :
          *Defendants*.                                             :
                                                                    :
------------------------------------------------------------------- X

ROSS, United States District Judge:

Plaintiff, Jane Remler, filed this action against defendants, Cona Elder Law, PLLC ("Cona") and Riverside Premier Rehabilitation and Healing Center ("Riverside"). The complaint alleges that the defendants wrongfully sought payment from Ms. Remler for debt owed to Riverside for rehabilitative care services rendered to Ms. Remler's husband, Norman Blank. Ms. Remler is suing Cona for violating the Federal Debt Collection Practices Act ("FDCPA"), 16 U.S.C. §§ 1692e and 1692f, and New York Judiciary Law § 487, and both defendants for violating the New York General Business Law § 349 and for gross negligence. The defendants have moved to dismiss the claims against them. For the following reasons, I dismiss the plaintiff's claims brought under New York's GBL § 349, the New York Judiciary Law § 487, and a theory of gross negligence. I also dismiss the FDCPA claims against Cona with the following exception: plaintiff may continue to pursue her FDCPA claims against Cona under §§ 1692e and 1692f pertaining to the alleged misstatement of the amount owed by the plaintiff and attempt to collect an amount not

expressly authorized by agreement.

## BACKGROUND

The following facts are drawn from the amended complaint filed in this federal action and documents upon which it relies. For the purposes of deciding this motion, the factual allegations in the complaint are accepted as true.

Riverside is a facility providing residential nursing home care and services in Manhattan. Am. Compl. ¶ 7, ECF No. 17. Cona is a law firm based in New York specializing in consumer debt collection. *Id.* ¶¶ 4–5. Since 2016, Riverside has regularly engaged attorneys affiliated with Cona to file debt collection lawsuits. *Id.* ¶ 8.

On December 24, 2019, Mr. Blank entered Riverside to receive nursing care after a spinal cord surgery. *Id.* ¶ 10. On February 18, 2020, Mr. Blank's insurance company ("United Healthcare") determined that he no longer required in-facility treatment and should be transferred to custodial care or home care, thus denying further coverage for care at Riverside as of February 21, 2020. *Id.* ¶¶ 13, 15; Ex. A, ECF No. 17-1. The letter did, however, allow that an unspecified number of "[a]dditional days [were] approved for arranging needed equipment and planning safe transition." *Id.* ¶ 14; Ex. A. Thus, the care received between February 21 and Mr. Blank's ultimate discharge from the facility on March 10 ("the transition period") was deemed not medically necessary, but still likely to be covered as a period of transition to home care. *Id.* ¶¶ 15–16.

On May 28, 2020, United Healthcare sent a letter to Riverside, copied to Mr. Blank. It informed the care facility that it had overbilled Mr. Blank for services received during the transition period, and thus should adjust its bill accordingly. *Id.* ¶ 21; Ex. E, ECF No. 17-5. With respect to that period, the letter also emphasized that as outlined in Riverside's participation agreement with United Healthcare, Riverside was prohibited from billing members for charges above the patient's

negotiated rate under the agreement. *Id*. Ex. E.

In the wake of this communication, apparently in lieu of seeking recovery from the insurance company, Riverside assigned Mr. Blank's debt for the transition period to Cona for collection. *Id*. ¶¶ 22, 29. Cona sent Ms. Remler a letter on September 18, 2020, alleging that $9,784.98 was owed for Mr. Blank's care during the transition period. *Id*. ¶ 23; Ex. F, ECF No. 17-6. In its collection letter, Cona alleged that Ms. Remler "had access to and/or received Norman Blank's assets and/or income, which should have been remitted to The Riverside for the skilled residential nursing services provided to him." *Id*. ¶ 25, Ex. F, ECF No. 17-6.

On October 19, 2020, Cona, on behalf of Riverside, filed a preliminary summons to commence a proceeding against Mr. Blank and Ms. Remler in the Supreme Court of the State of New York, County of Queens. *Id*. ¶ 26; Ex. G, ECF No. 17-7. That filing stated that this suit would bring claims for breach of implied contract, unjust enrichment, and breach of New York Family Court Act § 412, a state statute mandating that "[a] married person is chargeable with the support of his or her spouse." Cona sought damages in the amount of $9,784.98 together with interest. Am. Compl. ¶ 26; Ex. G, ECF No. 17-7.

On October 20, 2020, United Healthcare sent Mr. Blank a letter stating that his appeal to the insurer seeking coverage of the room and board charges for the transition period had been withdrawn because the insurance company's records did not reflect any claim on file for those dates. *Id*. ¶ 28; Ex. H, ECF No. 17-8.

Apparently, such a claim was thereafter filed because between December 2020 and March 2021, United Healthcare sent Mr. Blank four separate Explanation of Benefits letters. *Id*. ¶¶ 31, 75; Exs. J, K, L, Q; ECF Nos. 17-10–12, 17. Those letters indicated that United Healthcare, on the dates stated, had on file a claim for the room and board Mr. Blank received during the transition

3

period, totaling $8,550. *Id.* ¶ 75; Ex. Q.

On January 18, 2021, Cona, on behalf of Riverside, filed a verified complaint ("State Court Complaint"), formally commencing the state court suit against both Mr. Blank and Ms. Remler. *Id.* ¶¶ 32–33; Ex. M, ECF No. 17-13. The State Court Complaint contained the claims for breach of implied contract and unjust enrichment as to Mr. Blank, and violation of Family Court Act § 412, or, in the alternative, the analogous common law doctrine of necessaries, as to Ms. Remler and Mr. Blank. *Id.* Ex. M. The State Court Complaint also contained a claim against Mr. Blank and Ms. Remler for fraudulent conveyance. *Id.* This claim, made upon information and belief, alleged that Mr. Blank "wrongfully conveyed his assets and income to [Ms. Remler] without fair consideration, in order to prevent [Riverside] from recovering monies due it for services provided." Am. Compl. ¶¶ 34–35; Ex. M. The State Court Complaint stated no specific allegations as to the fraudulent conveyance, but on the basis of that alleged fraud sought attorney's fees under New York Debtor and Creditor Law § 276-a. *Id.* ¶ 62; Ex. M. Ms. Remler and Mr. Blank moved to dismiss this state court action on February 5, 2021. *Id.* ¶ 72; Ex. N, ECF No. 17-14.

On April 29, 2021, United Healthcare sent Riverside a letter requesting more information regarding the claim. *Id.* ¶ 76; Ex. R, ECF No. 17-18. On May 24, 2021, United Healthcare again wrote to Riverside following up on its prior unanswered request for additional information. *Id.* ¶ 77; Ex. S, ECF No. 17-19.

On July 15, 2021, United Healthcare sent Mr. Blank an explanation of benefits statement indicating it had issued payment to Riverside for the services received during the transition period, in the amount of $8,550 and that Mr. Blank did not owe anything further. *Id.* ¶ 79; Ex. T, ECF No. 17-20. The statement noted that United Healthcare had received more information from Riverside, enabling it to reprocess the claim at the provider's contracted rate. *Id.* Ex. T. The state court action

4

was discontinued on September 16, 2021. *Id.* ¶ 85; Ex. V, ECF No. 17-22.

Ms. Remler filed her original complaint with this court on September 7, 2021, Compl., ECF No. 1, and an amended complaint on February 24, 2022, Am. Compl., ECF No. 17. Her complaint alleges that Riverside "responded to the notice" from United Healthcare that it had overbilled Mr. Blank by "simply withdrawing" its claim against the insurer and in lieu of resolving that claim, instead "fil[ed] a baseless lawsuit against Ms. Remler." Am. Compl. ¶ 29. As a result, the complaint alleges, the defendants "inflated the amount of the debt sought in the lawsuit due to [their own] negligence" by billing above the negotiated rate. *Id.* 17.

Beyond that, the complaint makes a number of sweeping allegations of wrongdoing. It alleges that Cona and Riverside have demonstrated a pattern of filing lawsuits "upon information and belief," based on which defendants seek default judgments against debtors' family members. *Id.* ¶¶ 103–123. The complaint takes particular issue with the allegations of fraudulent conveyance made in the State Court Complaint. It alleges that this claim was advanced though defendants "had no evidence" to support and "knew they would not be able to prove" the claim, which the plaintiff characterizes as a nefarious ploy to obtain attorney's fees. *Id.* ¶ 43. Remler also alleges a failure of meaningful attorney review, in that Cona neglected to verify the validity of the underlying debt or make "an independent legal determination that [the plaintiffs] were liable for attorney's fees. *Id.* ¶¶ 60, 61. The overarching scheme the plaintiff alleges is that the defendants sought "to pressure third-parties to settle, to not oppose the collection lawsuit, or even to default, based on the threat of being liable for additional attorney's fees generated by Cona; and to embarrass" debtors with these false allegations. *Id.* ¶ 44.

The defendants filed a motion to dismiss the complaint for failure to state a claim on February 3, 2022, Mot. to Dismiss, ECF No. 12, and an amended motion to dismiss on March 31,

5

2022, Am. Mot. to Dismiss, ECF No. 18.

## DISCUSSION

When deciding a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., I must "accept all factual allegations as true" and "draw all reasonable inferences in favor of the plaintiff[]." *Melendez v. City of New York*, 16 F.4th 992, 1010 (2d Cir. 2021) (citation omitted). A claim is sufficiently plausible to withstand a motion to dismiss when the "factual content" of the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Cavello Bay Reinsurance Ltd. v. Shubin Stein*, 986 F.3d 161, 165 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). I am not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Drimal v. Tai*, 786 F.3d 219, 223 (2d Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 189 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 662).

1. **Federal Debt Collections Practices Act §§ 1692e and 1692f**

The complaint brings a single federal claim against the Cona Defendants for violations of §§ 1692e and 1692f of the FDCPA. The FDCPA was designed to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).

The FDCPA "authorizes private civil actions against debt collectors who engage in certain prohibited practices." *Rotkiske v. Klemm*, 140 S. Ct. 355, 358 (2019). To state a claim under that statute, a plaintiff generally must plead that (i) the plaintiff is a "consumer," (ii) the defendant is a "debt collector," and (iii) the defendant committed an act or omission that amounts to a violation

of the FDCPA. *See, e.g.*, *Derosa v. CAC Fin. Corp.*, 278 F. Supp. 3d 555, 559–60 (E.D.N.Y. 2017); *Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 522, 529 (S.D.N.Y. 2013). Cona does not dispute that Ms. Remler is a consumer and it is a debt collector for the purposes of the FDCPA, so the only question before me is whether Ms. Remler has sufficiently alleged acts or omissions amounting to a violation of the FDCPA.

Section 1692e provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The section provides a non-exhaustive list of such prohibited conduct, which includes the threat to take any action that cannot legally be taken or that is not intended to be taken and the false representation of "the character, amount, or legal status of any debt." *Id.* §§ 1692e(2)(A), (5). The Second Circuit has interpreted § 1692e as proscribing "even a partial misstatement of a consumer's debt obligation." *Vangorden v. Second Round, L.P.*, 897 F.3d 433, 442 (2d Cir. 2018).

A representation is "deceptive" under § 1692e if it is "open to more than one reasonable interpretation, at least one of which is inaccurate." *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 135 (2d Cir. 2017) (quotation omitted). I must "analyze the reasonableness of an interpretation from the perspective of the least sophisticated consumer, who, [the Second Circuit has] explained, lacks the sophistication of the average consumer and may be naive about the law, but is rational and possesses a rudimentary amount of information about the world." *Id.* (citation omitted).

Section 1692f provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. "Although the FDCPA leaves the term 'unfair or unconscionable means' undefined," the Second Circuit has "held that the term refers to practices that are shockingly unjust or unfair, or affronting the sense of justice, decency,

or reasonableness." *Arias,* 875 F.3d at 135 (quotations omitted). "Like its counterpart, section 1692e, section 1692f contains a non-exhaustive list of unfair practices." *Id.* Such unfair practices may include a defendant attempting "to collect an amount not authorized by agreement or permitted by law." *Vangorden*, 897 F.3d at 438.

Contrary to the defendants' assertion, Am. Mot. to Dismiss 9–10, §§ 1692e and 1692f are not mutually exclusive and the same conduct by a debt collector can violate both sections at once, *Arias*, 875 F.3d at 135–36 (2d Cir. 2017). "Each section primarily targets a different type of misconduct, even as both sections share the goal of protecting consumers from abuse by debt collectors. Section 1692e mainly targets practices that take advantage of a debtor's naivete or lack of legal acumen. Section 1692f, meanwhile, is aimed at practices that give the debt collector an unfair advantage over the debtor or are inherently abusive." *Id*.

Ms. Remler's complaint presents facts regarding Cona's misstatement of the amount owed and attempt to collect an amount not expressly authorized by agreement with sufficient particularity to allege violations of both §§ 1692e and 1692f of the FDCPA. As alleged in the complaint, the defendants "inflated the amount of the debt sought in the lawsuit due to [their own] negligence." Am. Compl. 17. In both the initial collection letter and the subsequent state litigation, Cona sent notice seeking to recover $9,784.98 despite Riverside's receiving notice from the insurance company in May 2020 that it was overbilling. Am. Compl. Ex. E. Subsequent communications from the insurer indicate that Mr. Blank owed $8,550, and the insurance company ultimately settled the debt for that lesser amount. If proven, this discrepancy would constitute not only a misstatement of the obligation but would also be misleading in that it would represent to the "least sophisticated consumer" that there was no underlying agreement between the insurance company and the provider for in-network services, thus inducing the debtor to pay a higher amount

8

than owed, in violation of § 1692e.

Should Remler prove that Cona overstated the amount due as a result of its own negligence, such an attempt to collect an amount not authorized by the underlying agreement would present a violation of § 1692f. Cona proceeded with the collection litigation in the face of notice to Riverside from United Healthcare that the care facility was overbilling and knowing that United Healthcare's requests for additional information went unanswered. If proven, such actions could also constitute a violation of § 1692f. *See Arias*, 875 F.3d at 138 ("[A] debt collector engages in unfair or unconscionable litigation conduct in violation of section 1692f when, as alleged here, it in bad faith unduly prolongs legal proceedings or requires a consumer to appear at an unnecessary hearing.").

Defendant's other alleged violations of the FDCPA pertain to the underlying accusations of fraudulent conveyance in the state court lawsuit. Am. Mot. to Dismiss 6–7. As to these, the defendant's motion to dismiss prevails, because the complaint fails to plead a plausible claim under either § 1692e or § 1692f arising from that state court litigation claim. The plaintiff alleges that the defendants lacked a good faith basis to bring the state court litigation to collect the debt and specifically to allege fraudulent conveyance. But "standing alone," an "allegation that [a defendant previously] filed and pursued [a] lawsuit without sufficient evidence fails to state a claim that the lawsuit was a false, deceptive, or misleading representation or means to collect a debt." *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 172 (2d Cir. 2015); *cf. Arias*, 875 F.3d at 138 (finding that a FDCPA claim could proceed where the record alleged that the debt collector had documentary proof prior to filing a collection lawsuit that they had no legal basis to pursue

9

collection and did so in bad faith).[1]

The plaintiff alleges that the State Court Complaint was misleading because it wrongly and in bad faith implied that Ms. Remler was responsible for the outstanding debt. But these cursory allegations, standing alone, do not sufficiently plead a claim under either § 1692e or § 1692f. The complaint and attached documents provide no factual support for the claim that the defendants moved forward with state court proceedings in the face of evidence that no such debt existed or that they lacked a legal basis to pursue it. Riverside provided care to Mr. Blank and the state court collection lawsuit was an effort to collect an outstanding amount due for that care. The complaint does not incorporate a contract or admission agreement between Mr. Blank and/or Ms. Remler and Riverside, documents that, if provided, might illuminate the terms of Mr. Blank's care. Without referencing such an agreement, the plaintiff instead attempts to assert that the Nursing Home Reform Act, 42 U.S.C. § 1396r *et seq.*, which includes a prohibition on nursing homes requiring or requesting financial guarantees of third parties as a condition of *admission*, forecloses Riverside from holding Ms. Remler liable for the debt. Am. Compl. 1–2. But that federal provision governing nursing home admissions "expressly permits a nursing facility to require an individual, who has legal access to a resident's income or resources available to pay for care in the facility, to sign a contract (without incurring personal financial liability) to provide payment from the resident's income or resources for such care." *Troy Nursing & Rehabilitation Ctr., LLC v. Naylor*, 944 N.Y.S.2d 323, 325 (N.Y. App. Div. 2012).

---

[1] *Eades* upheld the dismissal of claims based on similar allegations of bad-faith fraudulent conveyance litigation but indicated that had the plaintiff provided "further factual enhancement" that the allegations were false, such an allegation could have stated a plausible claim for relief. 799 F.3d at 172–173; s*ee also Franklin v. Cona Elder Law, PLLC*, 21-cv-4810 (DLC), 2022 WL 268628, at *3 (S.D.N.Y. Jan. 28, 2022) (applying *Eades*, dismissing a complaint that, as here, merely superficially alleged that an underlying state collection suit was frivolous and/or baseless without adequate factual enhancement).

The plaintiff cannot assert a claim here simply by alleging, without further factual support, that she did not owe a debt. Each theory of recovery Cona, on behalf of Riverside, sought to pursue in the state court collection lawsuit required the pleading of certain essential elements. In order to recover under the doctrine of necessaries claim, for example, Riverside was required to allege a wrongful conveyance that resulted in Mr. Blank not being able to satisfy the debt out of his own resources. *See Jones, LLP v. Sitomer*, 32 N.Y.S.3d 245, 246 (N.Y. App. Div. 2016) (stating the elements required to establish a claim under the doctrine of necessaries). Had the defendants been able to establish that Ms. Remler effected conveyance with an intent to defraud, Cona could have recovered attorney's fees under N.Y. Debtor and Creditor Law § 276-a. Whether or not these claims were ultimately meritless, however, the mere fact that the defendants alleged them "upon information and belief" does not, as the plaintiff attempts to argue, automatically signal bad faith amounting to a deceptive or misleading practice under the FDCPA.

The complaint also fails to plead that Cona used unfair or unconscionable means in violation of § 1962f. As with the § 1692e claim, this claim rests on the assertion that the allegations made in the State Court Complaint were false. Although Ms. Remler's complaint enthusiastically deploys the words "frivolous" and "baseless," it does not sufficiently allege any facts indicating that the actions Cona took while pursuing its state court lawsuit amounted to unconscionable means to pursue payment of a debt that "are shockingly unjust or unfair." *See Arias*, 875 F.3d at 135 (citation omitted).

To the extent that Remler broadly and without specificity alleges that Cona violated the FDCPA by "misrepresenting the services rendered," "falsely representing . . . that a

11

communication is from an attorney,"[2] "threatening to take . . . an action prohibited by law," and "falsly [sic] representing . . . that a consumer committed any crime . . . in order to disgrace the consumer," Am. Compl. ¶ 181, because the complaint does not establish sufficient factual support for those claims, they must be dismissed.

2. **Judiciary Law § 487**

An attorney is liable for a violation of Judiciary Law § 487 if he or she "[i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the Court or any party; or . . . [w]ilfully delays his client's suit with a view to his own gain." A cause of action under the statute "requires a showing of 'egregious conduct or a chronic and extreme pattern of behavior' on the part of the defendant attorneys that caused damages." *Facebook, Inc. v. DLA Piper LLP (US)*, 23 N.Y.S.3d 173, 178 (N.Y. App. Div. 2015) (internal quotations and citation omitted). Moreover, plaintiff's allegations of deceit or the intent to deceive must be pled with particularity. *Id.* at 178–79(dismissing a Judiciary Law § 487 claim where the allegations of scienter were conclusory and were not supported by specific facts).

---

[2] The plaintiff makes a conclusory and circular claim that because Ms. Remler was not liable for the underlying debt, Cona's decision to nevertheless pursue state court collection litigation demonstrates that Cona failed to meaningfully review the merits of its state lawsuit, in violation of §1692e. Am. Compl. ¶¶ 67–69; Pl.'s Mem. in Opp. to Mot. to Dismiss 27–28, ECF No. 21-1 (citing *Miller v. Wolpoff & Abramson, LLP*, 321 F.3d 292, 301 (2d Cir. 2003) (holding that "some degree of attorney involvement is required before a letter will be considered 'from an attorney' within the meaning of the FDCPA")). But this claim, again, relies on an unsupported assumption that the underlying debt does not exist. The cases that the plaintiff cites in support of her claim involve specific factual allegations regarding the defendant-attorneys' disregard for procedural and legal bars to collection. *See Musah v. Houslanger & Assocs., PLLC*, 962 F. Supp. 2d 636, 641 (S.D.N.Y. 2013) (allowing an FDCPA claim to proceed where the question of meaningful review "turn[ed] on [a] disputed issue of fact" regarding whether or not a plaintiff "received notice of the assignment" of the debt, the absence of which forecloses legal paths to collection) *and Diaz v. Portfolio Recovery Assocs., LLC*, No. 10 CV 3920 MKB CLP, 2012 WL 1882976, at *4 (E.D.N.Y. May 24, 2012) (finding a failure of meaningful review where the attorney filed a time-barred lawsuit). Here, the plaintiff provides no such specific factual support demonstrating a lack of meaningful review rising to the level of an FDCPA violation.

Plaintiff has failed to state a claim under this provision because she has not alleged the type of egregious conduct that this statute targets. The complaint alleges that Cona filed complaints containing meritless claims of fraudulent conveyance and misrepresented that it was entitled to attorney's fees, in violation of Judiciary Law § 487. Even assuming that Cona's underlying state court litigation was a frivolous lawsuit intentionally pursued for the purpose of obtaining legal fees, the New York Court of Appeals recently confirmed that plaintiff cannot invoke sanctions under Judiciary Law § 487, given that other curative mechanisms are available to address the filing of frivolous lawsuits, such as litigation sanctions, attorney misconduct proceedings, and legal malpractice actions. *Bill Birds, Inc. v. Stein Law Firm, P.C.*, 35 N.Y.3d 173, 180 n.3 (N.Y. 2020); *see also Elite C.I.R. Grp., LLC v. Green*, No. 651955/2017, 2022 WL 783950, at *4 (N.Y. Sup. Ct. Mar. 11, 2022) (citing *Bill Birds*, 35 N.Y.3d at 180) ("Judiciary Law § 487 does not encompass the filing of a pleading or brief containing nonmeritorious legal arguments, as such statements cannot support a claim under the statute.").

Plaintiff also attempts to demonstrate a "fraudulent scheme" evincing a pattern of egregious behavior by alluding to "approximately 490 lawsuits" Cona has filed on behalf of nursing homes. Am. Compl. ¶ 104. Plaintiff alleges that in 86 percent of complaints filed, Cona asserted false claims of fraudulent conveyance "upon information and belief" and failed to conduct a meaningful review of the validity of those claims. *Id.* ¶¶ 67–69, 104, 106, 188. But again, this allegation relies on an unsupported assumption that in all these cases, the claims of fraudulent conveyance were baseless and pursued in bad faith. The filing of lawsuits alleging similar claims "upon information and belief," standing alone, does not sufficiently allege a claim of legal delinquency under Judiciary Law § 487. The plaintiff has failed to allege specific facts that rise to the "egregious" level necessary to establish such a claim.

13

### 3. New York General Business Law § 349

GBL § 349 outlaws "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. L. § 349(a). To state a claim under this provision, a plaintiff must allege that (i) that the defendant engaged in consumer-oriented conduct, (ii) the defendant's conduct was materially misleading, and (iii) the plaintiff was injured as a result of the defendant's conduct. *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 124 (2d Cir. 2017). To establish consumer-oriented conduct, a plaintiff "need not show that the defendant committed the complained-of acts repeatedly . . . but instead must demonstrate that the acts or practices have a broader impact on consumers at large." *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (N.Y. 1995). "Private contract disputes, unique to the parties, . . . [do] not fall within the ambit of the statute." *Id.* A "plaintiff's allegation regarding the number of [state court] actions filed by a law firm, *without more*, does not enable a court to 'draw the reasonable inference' that defendants are engaged in a pattern of misconduct involving other [consumers]." *Finch v. Slochowsky & Slochowsky, LLP*, No. 19-CV-6273 (RPK), 2020 WL 5848616, at *6 (E.D.N.Y. Sept. 30, 2020) (citing *Iqbal*, 556 U.S. at 678) (emphasis added).

Remler has failed to state a claim under GBL § 349 because she has not alleged "consumer-oriented conduct." The challenged conduct here consists of filing a single complaint that suffered from various alleged deficiencies, as described above. This conduct—the prosecution of an individual lawsuit—was not commercial activity directed at consumers generally, nor did it have any "ramifications for the public at large." *Obal v. Deutsche Bank Nat. Trust Co.*, No. 14 Civ. 2463, 2015 WL 631404, at *8 (S.D.N.Y. Feb. 13, 2015) (internal quotation marks and citation omitted).

In a conclusory fashion, Remler asserts a broader "pattern of deception" by citing to the number of allegedly unsubstantiated lawsuits the defendants have filed but she alleges no facts to support that claim. Am. Compl. ¶¶ 101–106, 194; *cf. Mayfield v. Asta Funding, Inc.*, 95 F. Supp. 3d 685, 700 (S.D.N.Y 2015) (allowing a claim to proceed where the plaintiff adequately alleged that defendants filed fraudulent debt collection lawsuits against thousands of New York consumers where *no underlying debt existed*). As noted, the complaint gestures to other cases Cona has litigated on behalf of nursing homes between 2017 and 2020 alleging "threadbare" claims "without any factual basis." *Id.* ¶¶ 103–123. But there is nothing inherently inappropriate about a debt collector suing to recover payment, even if alleging only the barest of facts. The plaintiff's allegation regarding the number of cases the defendants have filed, without more, again, does not rise above a speculative level nor does it enable to me to draw "the reasonable inference" that the defendants are engaged in a pattern of misconduct. *Iqbal*, 556 U.S. at 678.

4. **Gross Negligence**

Under New York law, to prevail on a claim of gross negligence, a plaintiff must establish (1) the existence of a duty on the part of the defendant to the plaintiff; (2) a breach of this duty; (3) injury to the plaintiff as a result and (4) that the defendant's conduct "evinces a reckless disregard for the rights of others or 'smacks' of intentional wrongdoing." *Am. Tel. & Tel. Co. v. City of New York*, 83 F.3d 549, 556 (2nd Cir. 1996) (quotation omitted). "Gross negligence has also been defined as the degree of neglect arising where there is a reckless indifference to the safety of human life or an intentional failure to perform a manifest duty to the public . . . .'" *Charter Oak Fire Ins. Co. v. Trio Realty Co.*, No. 99 Civ. 10827 (LAP), 2002 WL 123506, *4 (S.D.N.Y. Jan. 31, 2002) (citation omitted). "Recklessness in the context of a gross negligence claim means an extreme departure from the standards of ordinary care, such that the danger was either known to the

defendant or so obvious that the defendant must have been aware of it." *Bayerische Landesbank v. Aladdin Cap. Mgmt., LLC*, 692 F.3d 42, 61 (2nd Cir. 2012) (internal quotation marks omitted).

Remler fails to specifically plead any of the required elements for a claim of gross negligence. Even assuming the existence of a duty, the complaint fails to set forth facts tending to show that the defendants acted with "reckless indifference." Rather, the complaint recites the definition of gross negligence, generally alleging that the defendants' actions "evince a reckless disregard" for her rights with a "high degree of moral culpability and willful or wanton negligence or recklessness." Am. Compl. ¶¶ 205–206. But such general allegations fail to allege even the bare elements of negligence, much less the "additional, heightened element" of "reckless disregard" required to sustain a claim of gross negligence. *Sanchez v. Ehrlich*, 16-cv-8677 (LAP), 2018 WL 2084147, at *7 (S.D.N.Y Mar. 29, 2018).

## Conclusion

I dismiss (i) plaintiff's FDCPA claims against Cona on all grounds except those concerning the misstatement of the amount owed, as discussed above; (ii) plaintiff's claim against Cona under Judiciary Law § 387; (iii) plaintiff's claims against all defendants under GBL § 349; and (iv) plaintiff's claims against all defendants under a theory of gross negligence. Plaintiff is granted leave to amend her complaint within 30 days but is strongly cautioned against repleading any dismissed claims with respect to which she cannot supply the legally required factual support. The Clerk of Court is directed to amend the case caption to reflect the dismissal from this action of Riverside.

SO ORDERED.

_____/s/_____

Allyne R. Ross
United States District Judge

Dated:        September 29, 2022
              Brooklyn, New York

17