# AHMAD KESHAVARZ
*Attorney at Law*

---

16 COURT ST., 26TH FLOOR   WWW.NEWYORKCONSUMERATTORNEY.COM   Telephone: (718) 522-7900
BROOKLYN, NY 11241-1026   E-mail: ahmad@NewYorkConsumerAttorney.com   Fax: (877) 496-7809

April 14, 2023

VIA ECF
Hon. Judge Allyne R. Ross
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    Letter Request for Pre-Motion Conference to Amend Complaint to Revive FDCPA and GBL 349 Claim
             *Remler v. Cona Elder Law PLLC, et al.,* No. 1:21-cv-05176-ARR-LB

Dear Judge Ross:

      The undersigned represents Plaintiff Jane Remler in this FDCPA lawsuit against the nursing home debt collection law firm Cona Elder Law, PLLC, f/k/a Genser, Dubow, Genser & Cona, LLP ("Cona"). Plaintiff files this letter for pre-motion conference to file a motion to amend to revive her FDCPA and related GBL § 349 claims against Cona that were dismissed by this Court on September 29, 2022 (Dkt. No. 22) (the "Dismissal Order").[1]

      Plaintiff can now address the concerns of the Court in the Order and "supply the legally required factual support" in this "repleading [of] any dismissed claims" Dismissal Order, p. 16. The Court should grant plaintiff's motion if the amendments would not be "futile." *Samms v. Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP*, No. 15-CV-2741 JSR, 2015 WL 6437493, at *3 (S.D.N.Y. Oct. 21, 2015) (granting motion to amend to revive GBL 349 claim; consumer oriented pled by alleging in review of collection lawsuits 36 of 49 made impermissible demand for attorney's fees).

## ARGUMENT

### 1. *Eades* "Further Factual Enhancement" Lays Out the Standard for Revival Here.

      This Court's Order dismissing the FDCPA and GBL § 349 claims regarding baseless allegation of fraudulent conveyance cited to the Second Circuit case *Eades v. Kennedy, PC Law Offices,* 799 F.3d 161, 172-173 (2d Cir. 2015), noting that it "indicated that had the plaintiff provided 'further factual enhancement' that the allegations were false, such an allegation could have stated a plausible claim for relief."

While *Eades* does not expressly provide what the "further factual enhancement" would be, it can be inferred from what the Second Circuit deemed factually insufficient about the *Eades* case. First, the plaintiff in *Eades* "failed to allege that Kennedy's claims were frivolous or baseless." *Eades,* 799 F.3d at 172. The court stated that the plaintiff could have done so by alleging "that

---

[1] Plaintiff is not seeking to revive the other claims against Cona that were dismissed (i.e. Judiciary Law 487 or gross negligence), nor does she seek to bring back into the case former defendant Riverside Premier Rehabilitation and Healing Center.

1

Ms. Pike fulfilled her financial obligations to Corry Manor, that Mr. Pike did not sign the admission agreement, or even that the Plaintiffs are not 'debtors' under Pennsylvania's fraudulent transfer statute." *Id.* Second, the plaintiff in *Eades* also failed "to allege that Kennedy was without a good faith basis to file the lawsuit." *Id.* And third, the plaintiff in *Eades* failed to provide any "indication" that the debt collector "falsely alleg[ed]" that the property "had been fraudulently transferred." *Id.*Plaintiff's Second Amended Complaint will provide substantial factual enhancements to each of these three issues.

Cona does not review bank statements when drafting complaints or collection letters alleging fraudulent conveyance or spousal support. Moreover, the Case Referral sheet that Cona receives upon receiving a nursing home account would come with bank statements if the nursing home had them. However, in a lot of instances, there are no bank statements provided, which Cona testified means the nursing home had none. These are documents that Cona would need to establish fraudulent conveyance. When Cona drafts collection letters and Verified Complaints alleging fraudulent conveyance it only reviews a handful of documents, none of which are bank statements. None of the limited documents Cona reviews would show or suggest a fraudulent conveyance.  However, Cona testified that whether a spouse has income certainly is a factor in seeking a claim against the spouse. From 2011 until after this lawsuit, Cona used the same fact free language in complaints and collection letters alleging fraudulent conveyance that they used as to Mrs. Remler. Cona testified that when it alleged fraudulent conveyance in the collection letters, the firm was not "specifically able to detail the dates, the actual assets, the income, the time, the dates, the time – the actual specifics."

As to Ms. Remler specifically, when Cona sent the collection letter, filed the action, and served the Verified Complaint, Cona knew that it did not have – nor could it obtain – bank statements necessary to establish fraudulent conveyance. No banking information was provided in the referral to Cona of the debt owed by Norman Blank, Plaintiff's husband. Cona identified no fraudulent conveyances, or even Ms. Remler having access to Mr. Blank's accounts, prior to filing the Verified Complaint. Importantly, Cona did not have (or even attempt to obtain) any such evidence in the many months that the collection lawsuit was litigated. Cona fiercely opposed Mrs. Remler's motion to dismiss the collection lawsuit for failure to allege a single fact in support of the claim (other than being married).  Yet in deposition, Cona testified that the information they had did not show "a fraudulent conveyance." Cona has produced all documents related to the case, and none of those documents show any discovery requests, subpoenas, or other such documents evincing any attempt by Cona to factually determine whether there had been fraudulent conveyances between Ms. Remler and her husband Norman Blank.

**2.  Plaintiff Now Offers Robust Factual Support for Her GBL § 349 Allegations.**

This Court previously dismissed Plaintiff's GBL § 349 claim because "the prosecution of an individual lawsuit – was not commercial activity directed at consumers generally, nor did it have any 'ramifications for the public at large.'" Dismissal Order p. 14 *quoting Obal v. Deutsche Bank Nat. Trust Co.*, No. 14 Civ. 2463, 2015 WL 631404, at *8 (S.D.N.Y. Feb. 13, 2015) (internal quotation marks and citation omitted). But as the Court noted, prosecution of debt collection lawsuits against thousands of New York consumers has been found to be consumer-oriented. Dismissal Order p. 15 *citing Mayfield v. Asta Funding, Inc.,* 95 F. Supp. 3d 685, 700 (S.D.N.Y. 2015). The Court distinguished the allegations in the Original Complaint from those in *Mayfield* by noting that Cona's complaints "alleging only the barest of facts" was insufficient to support Plaintiff's claim that the complaints support a pattern of misconduct.

2

The Proposed Second Amended Complaint will remedy these deficiencies that were the basis for the prior dismissal of the GBL § 349 claim by explaining Cona's general practices in drafting demand letters and Verified Complaints. Cona fails to identify instances of fraudulent conveyance prior to sending demand letters and filing complaints. But crucially beyond this failure, Cona's standard practice of only reviewing certain documents prior to sending demand letters and filing verified complaints means that it could not ever identify, and has not ever identified, fraudulent conveyances prior to sending the letters and filing the complaints. Instead, Cona admits that the basis for making these allegations of fraudulent conveyance is to obtain third party liability rather than any basis in fact, and accordingly copies verbatim the same language for the allegations.

It is of course possible that Cona could bring a fraudulent conveyance claim without a factual basis and, by happenstance, the allegations turn out to be true. However the misrepresentation as to Ms. Remler was deceptive (as laid out above), and the standard for whether this deceptive conduct is consumer-oriented is not whether it will always be deceptive in every instance but rather whether the conduct has the "potential to affect similarly situated consumers." *Hunter v. Palisades Acquisition XVI, LLC,* No. 16 CIV. 8779 (ER), 2017 WL 5513636, at *10 (S.D.N.Y. Nov. 16, 2017). When a debt collection firm is admittedly bringing claims of fraudulent conveyance without any factual basis for doing so, it has a very high potential to affect similarly situated consumers. Accordingly, Plaintiff has established that Cona misrepresenting to consumers that they have committed fraudulent conveyance without any factual basis is consumer-oriented.

3. **Plaintiff Now Offers Robust Factual Support for Her Allegation that She Owed No Debt to Cona, and Cona Had No Reason to Believe She Owed Such a Debt.**

Your Honor specifically cited to *Troy Nursing & Rehabilitation Ctr., LLC v. Naylor,* 944 N.Y.S.2d 323, 325 (N.Y. App. Div. 2012) for the proposition that a nursing facility can "require an individual, who has legal access to a resident's income or resources available to pay for care in the facility, to sign a contract **(without incurring personal financial liability)** [emphasis added] to provide payment from the resident's income or 'resources for such care.'" Your Honor correctly noted that "a contract or admission agreement…if provided, might illuminate the terms of Mr. Blank's care." Dkt. No. 22. In short, an admission agreement was not provided by Plaintiff because there is not one, and that has been clarified in the Second Amended Complaint. It is clear that Defendant's factual basis for the debt, as owed by Norman Blank, was not such an agreement because the Collection Lawsuit only alleged "Breach of Implied Contract" and "Unjust Enrichment" against him – no claims were made on the basis of an admission agreement (because none existed).

This lack of what is colloquially referred to as a "responsible party clause" in the admission agreement (and in the admission agreements of many other nursing homes) is precisely why Cona has weaponized fraudulent conveyance claims against consumers despite not having and being unable to obtain factual bases for these fraudulent conveyance claims.

Sincerely,

/s/

Ahmad Keshavarz

cc: all counsel of record via ECF